Steve **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 71483.

Court of Criminal Appeals of Texas,
En Banc.

May 17, 1995.

George Scharmen, San Antonio, for appellant.

Steven C. Hilbig, Dist. Atty., and Mark Luitjen, Jay Norton and Melissa Barlow, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

OVERSTREET, Judge.

Appellant was convicted by a jury for capital murder committed in the course of burglary and/or robbery. Tex.Penal Code § 19.03(a)(2). The jury answered the submitted special issues affirmatively, and appellant was sentenced to death. Tex.Code Crim.Proc. art. 37.071, § 2(b). Appellant presents eight points of error on appeal.

Appellant pled guilty to the commission of the offense. A recitation of the facts is not necessary to the disposition of the case, therefore, we proceed with appellant's points of error.

### I. Appellant's Mental Health Examination

Appellant's first point of error complains he was denied Due Course of Law under article 1, sections 13 and 19 of the Texas Constitution and articles 1.04, 46.02 and 46.03 of the Texas Code of Criminal Procedure.[1] In his second point of error, he complains he was denied due process of law by access to the courts under the Fifth and Fourteenth Amendments to the U.S. Constitution through the failure of the State to follow its own law under articles 1.04, 46.02 and 46.03 of the Texas Code of Criminal Procedure.[2]

1. Appellant's Texas Constitutional arguments are premised on the notion that he was denied due course of law because he was denied access to the "open courts" provision of Article I, section 13 of the Texas Constitution. That is, he was denied his right of redress (an administrative hearing on the findings of the examination) of the mental health expert's determination of whether he was mentally retarded. Because these statutory provisions were not followed, appellant was denied the due course of law based upon article I, sections 13 and 19.

2. Appellant's federal Due Process complaints are identical to his State complaints but couched in the Federal Constitution, that is a denial of ac-

His third point of error evokes the protection of the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the U.S. Constitution by the arbitrary refusal of the State to follow these same code provisions.[3]

■ Articles 46.02 and 46.03 govern the examination of a defendant for competency and insanity. Both articles also require a determination of whether a defendant is "mentally retarded" as defined in the Health Code. The points of error raised here rest specifically on appellant's contention that Dr. Sparks' mental retardation evaluation of appellant failed to comply with statutory requirements contained in both the Code of Criminal Procedure and the Texas Health and Safety Code (hereinafter Health Code). Appellant's arguments are based on the mistaken premise that Articles 46.02 and 46.03 are governed by the requirements in the Health Code.

The record establishes that prior to appellant's trial defense counsel notified the trial court that there was some evidence from a previous mental examination that appellant may be mentally deficient. Counsel also filed a notice of his intent to present an insanity defense. Accordingly, on July 31, 1991, the trial court ordered the Bexar County Psychiatrist to perform a competency evaluation of appellant under Article 46.02 and an evaluation concerning appellant's sanity at the time of the offense under Article 46.03.[4] Dr. Sparks conducted that examination on December 3, 1991. Pursuant to that order, Dr. Sparks filed a report finding appellant competent to stand trial on December 16, 1991. In that report Dr. Sparks also found appellant not to be mentally retarded.

First, appellant argues that Dr. Sparks' examinations did not comply with the "comprehensive diagnosis and evaluation" requirements guaranteed by the "Bill of Rights of the Mentally Retarded" contained in chapter 592 of the Health Code. The Health and Safety Code does provide a basic Bill of Rights for the mentally retarded.[5] The right to a comprehensive diagnosis and evaluation is one of those explicit rights. The code provides:

> A person thought to be a person with mental retardation has the right promptly to receive a comprehensive diagnosis and evaluation adapted to that person's cultural background, language, and ethnic origin to determine if the person is in need of mental retardation services as provides by Subchapter A, Chapter 593.

Tex.Health & Safety Code, § 592.018. Nevertheless, nothing in either the Code of Criminal Procedure or in the Health Code indicates that the provisions of the Health Code govern mental retardation determinations made as part of the competency and insanity examinations under the Code of Criminal Procedure.

In support of his argument, appellant notes that articles 46.02 and 46.03 require the psychological examiner to make a determination, in addition to competency and insanity, of whether the defendant is a "mentally retarded person" as defined in article 5547–300, Vernon's Texas Civil Statutes.[6] He con-

cess to the administrative proceedings and a denial to the services.

3. Appellant's Equal Protection complaint concerns the denial of his "property" and "liberty" rights. That is, his "property" right to the entitlements under the Health Code, and a "liberty" right to the status as a person with mental retardation who is eligible for a comprehensive diagnosis and evaluation.

4. All references to articles contained in this opinion are to the Texas Code of Criminal Procedure unless otherwise noted.

5. That Bill guarantees the following rights:
(a) Each person with mental retardation in this state has the rights, benefits, and privileges

guaranteed by the constitution and laws of the United States and this state.
(b) The rights specifically listed in this subtitle are in addition to all other rights that persons with mental retardation have and are not exclusive or intended to limit the rights guaranteed by the constitution and laws of the United States and this state.
Tex.Health & Safety Code, § 592.011.

6. Article 5547–300 has been repealed and superseded by the Mental Health and Mental Retardation Act of 1991. Tex.Health & Safety Code § 591.001 et seq. The definition of a mentally retarded person is identical under both the former and present statute. Compare Tex.Civ.Stat. ann. art. 5547–300, § 3(7) and Tex.Health & Safety Code § 591.003(16).

cludes that through the use of this definition the legislature intended the Health Code to govern these examinations required by the Code of Criminal Procedure. Appellant's argument is unconvincing. The mere use by the legislature of a definition contained in the Health Code does not alone support an assumption that an examination in the Code of Criminal Procedure is governed by the Health Code.

Appellant, however, argues there is more evidence of this legislative intent. He directs our attention to the requirement, in sections 3(e) of both articles 46.02 and 46.03, for an affidavit from facilities run by the Texas Department of Mental Health and Mental Retardation or diagnostic centers approved by that department. Appellant misreads the applicable statutes; the statutes actually support the contrary position. Section 3(e) of article 46.02 provides: [7]

> *If* the examiner concludes that the defendant is a mentally retarded person and the examination has been conducted at a facility of the Texas Department of Mental Health and Mental Retardation or at a diagnostic center approved by the Texas Department of Mental Health and Mental Retardation, the examiner shall submit to the court an affidavit setting forth the conclusions reached as a result of the diagnostic examination.

(emphasis added). The statute clearly requires an affidavit only *if* the examination occurs at a department facility or department approved facility.[8] The conditionality of the statutory language itself contemplates an examination of a defendant at a facility that is

not run or approved by the department.[9] The language of the code does not compel mental retardation determinations be governed by the Health Code. In fact, the language of the Code of Criminal Procedure contradicts appellant's arguments.

Appellant's second line of argument contends that the Health Code itself asserts that its provisions govern all mental retardation examinations, and, alternatively, that the Bill of Rights of the Mentally Retarded creates an independent right to a comprehensive examination pursuant to the Health Code. Again, we disagree; nothing in the Health and Safety Code mentions mental retardation examinations for defendants.

The Health Code provisions for a diagnosis and evaluation, upon which appellant relies, are applicable to a determination of whether a person is mentally retarded when individuals thought to be mentally retarded are to be provided with certain services. The Health Code contemplates the protection of mentally retarded individuals, seeking to insure services and to place them in settings least restrictive of their rights. *E.g.,* Tex.Health & Safety Code, §§ 592.012 (Protection from Exploitation and Abuse); 592.013 (Least Restrictive Living Environment); 592.014 (Education); 592.015 (Employment); 592.016 (Housing). None of those provisions are applicable to individuals under criminal indictment. *E.g.,* Tex.Health and Safety Code, Chapter 593, Subchapter B (Application and Admission to Voluntary Mental Retardation Services) and Subchapter C (Commitment to Residential Care Facility). The Health Code

---

7. Section 3(e) of article 46.03, provides:

> The appointed experts shall be paid by the county in which the indictment was returned or information was filed. A facility operated by the Texas Department of Mental Health and Mental Retardation which accepts a defendant for examination under Subsection (a) of this section shall be reimbursed by the county in which the indictment was returned or information was filed for such expenses incurred as are determined by the department to be reasonably necessary and incidental to the proper examination of the defendant.

8. One of appellant's specific complaints is that the appointed expert did not file an affidavit with his report. However, one was not necessary.

Appellant was not examined at a "facility of the Texas Department of Mental Health and Mental Retardation or at a diagnostic center" approved by the department. Tex.Code Crim.Proc. art. 46.02, § 3(e). The affidavit was conditioned upon the location of the examination. Because the location did not meet the condition, the affidavit was not necessary under the terms of the statute.

9. This is similarly true of Article 46.03, § 3(e). Again the statute is clearly conditional resting upon the possibility that the trial court may select a department facility, in which case the provision specifies separate payment provisions for Department of Mental Health and Mental Retardation facilities and non-department facilities.

itself provides that an order for commitment for mental retardation service "is not an adjudication of mental incompetency." Tex. Health and Safety Code, § 593.054.

Nothing in the provisions of the Texas Health and Safety Code indicates that it governs competency, insanity, or mental retardation proceedings under the Code of Criminal Procedure. Appellant was not entitled to a "comprehensive diagnosis and evaluation" guaranteed by the "Bill of Rights of the mentally retarded" pursuant to chapter 592 of the Texas Health and Safety Code. The trial court and Dr. Sparks properly followed the provisions in the Code of Criminal Procedure which provide for the examination of a defendant for competency and insanity.

■ Finally, appellant complains of Dr. Sparks' delay in examining appellant and in complying with the trial court's order. Dr. Sparks' examination was conducted five months after the trial court's order. Under Articles 46.02 and 46.03, a written report of his examination was to be forwarded to the trial court within 30 days of the order. Appellant complains of Dr. Sparks' five-month delay in conducting the examination. The State responds appellant's failure to object to Dr. Sparks' compliance with the time table forfeits his right to complain on appeal. *See Marin v. State*, 851 S.W.2d 275 (Tex.Crim. App.1993); Tex.R.App.Proc. 52(a). Appellant, also citing to *Marin, supra*, argues that no objection is necessary. We agree with the State that appellant has forfeited his right to complain of Dr. Sparks' delay on appeal.

The delay in the independent examination of a defendant only peripherally affects the rights of the litigants. For example, the parties could argue that they were denied adequate preparation time for trial because of the delay or that the information from the examination was necessary to assist in forming the parties' theory of the case. We believe these to be adequate concerns for the individual parties in a criminal trial. However, if the mental health expert's delay will affect the litigants, it is incumbent upon them to bring the delay to the attention of the trial court.[10] Absent such action, failure to object will forfeit a party's right to complain on appeal. Appellant's failure to object to the delay of Dr. Sparks has forfeited his right to complain of the delay on appeal. *See Marin, supra*; Tex.R.App.Proc. 52(a).

Assuming, *arguendo*, appellant had objected to Dr. Sparks' delay, we believe the delay would have been harmless. Dr. Sparks was a "disinterested expert," and his compliance or noncompliance with the trial court's order in this case did not disadvantage or benefit either the State or appellant. *See* Tex.Code Crim.Proc.Ann. art. 46.02, § 3(a) and 46.03, § 3(a). Dr. Sparks' reports were filed three months prior to the commencement of voir dire and six months prior to the opening of the State's case. The only complaint on appeal concerns Dr. Sparks' noncompliance with a court order.[11] Arguably the delay benefitted appellant by providing more time for trial preparation. Because the report was filed six months prior to the beginning of voir dire, the delay in the order did not harm appellant in any manner. Tex.R.App.Proc. 81(b)(2).

In determining that appellant failed to object to Dr. Sparks' delay and that appellant was not entitled to a comprehensive diagnosis and examination pursuant to the Texas Health and Safety Code, we need not address appellant's constitutional concerns of the delay or denial of a particular type of examination. Accordingly, appellant's first three points of error are overruled.

## II. Voir Dire

■ In his fifth point of error, appellant claims that he was improperly sentenced to

---

10. The litigants are in the best position to determine whether the delay will adversely affect their trial strategy in any manner. Where time is of the essence, a party could seek a contempt order against the mental health expert, or the party could request a continuance in the trial for more preparation time because of the delay. If the delay is of a benefit to the litigant by increasing the preparation time for trial, it may be prudent for the litigant to permit the mental health expert the additional time necessary.

11. Dr. Sparks' delay in providing the trial court with the report may have subjected him to a contempt proceeding. However, neither the State or appellant requested the trial court to hold a show cause hearing.

death because the venire was "culled of jurors who were unable to take an oath that the mandatory penalty of death or imprisonment of life would not 'affect their deliberations on any issue of fact.'" To support this proposition appellant cites to both *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) and *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In Texas, prior to 1991, this oath was mandatory. Tex.Penal Code Ann. § 12.31(b) (West 1990). However, at the inception of voir dire the State informed the trial court of the change in the law that no longer required such an oath. Nevertheless, the trial court without an objection by either party gave the statutory oath. Specifically, appellant argues the trial court erred in independently giving such an oath and that by giving the oath appellant has been prejudiced. Absent an objection, however, appellant has waived error. Tex.R.App.Proc. 52(a); *see also DeBlanc v. State*, 799 S.W.2d 701, 718 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).

■ Assuming *arguendo* that appellant had preserved the error and assuming it was error for the trial court to administer the oath, appellant can show no harm. Each veniremember was challenged for cause or was peremptorily challenged by the State, and no veniremember was challenged for cause based upon his or her inability to follow the oath. Appellant complains of five veniremembers, two of which were peremptorily challenged by the State. In fact, appellant admits in his brief that the other three potential jurors who were successfully challenged for cause by the State "were disqualified on other grounds as well." Because

no veniremember was struck based upon their failure to follow the oath and each was challengeable on other grounds, we need not address the merits of appellant's point of error. Appellant's fifth point of error is overruled.

## III. Indictment

■ In his sixth point of error, appellant argues that his conviction is void because there was no charging instrument which had been presented to the court by a grand jury. The indictment in this cause read:

> IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS, the Grand Jury of Bexar County, State of Texas, duly organized, empaneled and sworn as such at the        term, A.D.,        Judicial District Court of said County, in said Court, at said term, do present in and to said Court that in the County and State aforesaid, and anterior to the presentment of this indictment, and on or about the
>
>     *     *     *     *     *     *
>
> Against the peace and dignity of the State.

The indictment was signed by the foreman of the grand jury. Appellant contends that because the indictment lacked the term of the grand jury and the number of the district court which empaneled the grand jury there was no indictment. Therefore, he asserts the district court had no jurisdiction pursuant to Article V, section 12(b) of the Texas Constitution to consider the cause.

We disagree. Article 21.02 of the Code of Criminal Procedure governs the requisites of an indictment.[12] The indictment on its face contains each of those requisites, and is therefore, deemed sufficient for purposes of

---

12. Article 21.02 provides that an indictment is "deemed sufficient" if it contains the following requisites:

1. It shall commence, "In the name and by the authority of The State of Texas."
2. It must appear that the same was presented in the district court of the county where the grand jury was in session.
3. It must appear to be the act of a grand jury of the proper county.
4. It must contain the name of the accused, or state that his name is unknown and give a reasonably accurate description of him.

5. It must show that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented.
6. The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation.
7. The offense must be set forth in plain and intelligible words.
8. The indictment must conclude, "Against the peace and dignity of the State."
9. It shall be signed officially by the foreman of the grand jury.

Article V, section 12(b) of the Texas Constitution to confer jurisdiction to the trial court. *See* Tex.Code Crim.Proc.Ann. art. 21.02; *Studer v. State,* 799 S.W.2d 263, 268 (Tex. Crim.App.1990).

Moreover, when a defendant fails to object to a defect in the form of an indictment he forfeits his right to complain of such error on appeal. Tex.Code Crim.Proc.Ann. art. 1.14; *Studer, supra* (defect in form and substance of indictment). In the instant case, both the number of the district court and the term of the grand jury are matters of form. *Huff v. State,* 123 Tex.Crim. 238, 58 S.W.2d 113, 114 (1933) (on rehearing) (The number of the district court is a matter of form which the parties may amend.); *Hightower v. State,* 73 Tex.Cr.R. 258, 165 S.W. 184, 186 (1914) (The term of the Grand Jury is a matter of form which the parties may amend.); *Weaver v. State,* 96 Tex.Crim. 363, 257 S.W. 246 (1924) (Term of grand jury is a matter of form); *Paulk v. State,* 97 Tex.Crim. 415, 261 S.W. 779 (1924) (Date of Grand Jury is matter of Form). Because appellant failed to object to the form of the indictment, he has forfeited his right to complain of such on appeal. *Studer,* 799 S.W.2d at 268. Appellant's sixth point of error is overruled.

### IV. Punishment

■ In the seventh point of error, appellant argues the trial court erred by failing to give a requested mitigation issue pursuant to *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The trial court gave a nullification instruction at appellant's request but refused to give a separate special issue. The nullification instruction given was identical to that given in *Fuller v. State,* 829 S.W.2d 191, 209 n. 5 (1992), *cert. denied,* ── U.S. ──, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993). We held in *Fuller* that the instruction given in that case was sufficient to meet the constitutional concerns of *Penry. Fuller,* 829 S.W.2d at 209. Additionally, we have recently held that a trial court does not err in giving a nullification instruction rather than a separate special issue.[13] *Robertson v.*

*State,* 871 S.W.2d 701, 710–711 (Tex.Crim. App.1993). Appellant's seventh point of error is overruled.

■ In the eighth point of error, appellant contends the trial court erred in charging the jury with an erroneous definition of "deliberately." The Court charged the jury as follows:

> The word "deliberately" has a meaning different and distinct from the word "intentionally" as that word was previously defined in the charge on guilt and the word "deliberately" as used in the first special issue means a manner of doing an act characterized by or resulting from careful consideration: a conscious decision involving a thought process which embraces more than mere will to engage in the conduct.

A virtually identical definition was approved in *Williams v. State,* 674 S.W.2d 315, 322 (Tex.Crim.App.1984). We have also held that giving the jury such an instruction is not error. *Martinez v. State,* 867 S.W.2d 30, 36–37 (Tex.Crim.App.1993), *cert. denied,* ── U.S. ──, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994). Appellant's eighth point of error is overruled.

### V. Ineffective Assistance of Counsel

In appellant's fourth point of error, he complains he was denied effective assistance of counsel as required under the U.S. Constitution, Texas Constitution, and the Code of Criminal Procedure. *See* U.S. Const. 6th and 14th Amendments; Tex. Const. art. I, §§ 10 and 19; Tex.Code Crim.Proc.Ann. arts. 1.04, 1.05, and 1.051. To show counsel was ineffective, appellant must demonstrate that his trial counsel's performance was deficient because it fell below an objective standard of reasonableness, and that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Robertson v. State,* 871 S.W.2d at 711; *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim. App.1986).

---

13. Appellant was tried prior to the recent amendments to articles 37.071 and 37.0711 of the Code of Criminal Procedure which now require a spe- cial issue concerning mitigating evidence be given in all capital trials.

Whether the *Strickland* standard has been met is to be judged by the "totality of the representation," rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of trial. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App. 1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). The burden of proving this ineffectiveness rests upon the defendant by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985). Further, such allegations will only be sustained if they are firmly founded in the record. *Smith v. State,* 676 S.W.2d 379, 385 (Tex.Crim.App.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). Appellant presents eight separate instances of ineffectiveness. In turn, we will address each of these complaints.

1. Counsel failed to assist appellant in obtaining a comprehensive diagnosis and evaluation under the statutory scheme of the Texas Health and Safety Code for an administrative finding on the issue of mental retardation.

We have previously addressed and determined that appellant was not entitled to a comprehensive diagnosis and evaluation. *See* Points of error one through three, *supra.* Accordingly, it was not error for trial counsel to fail to attempt to obtain the comprehensive diagnosis and examination set forth in the Health Code.

2. Appellant suffered from a mental illness, and counsel gave notice of the insanity defense. Nevertheless appellant's attorneys did not request a competency determination that appellant was competent and that a jury determination was not necessary.

Prior to trial, trial counsel filed a notice of his intention to raise the insanity defense during trial. Tex.Code Crim.Proc.Ann. art. 46.03 § 2(a). During closing arguments of the punishment portion of the trial, counsel for appellant argued the jury should answer the first special issue in the negative because appellant was mentally ill and retarded.[14] Appellant argues trial counsel was ineffective for failure to request a competency hearing. He argues that such a failure was inconsistent with trial counsel's concession that appellant was competent to stand trial and enter a plea of guilty.

We do not believe counsel's strategy was inconsistent. Competency considerations concern an individual's "present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Tex.Code Crim. Proc.Ann. art. 46.02 § 1(a). The insanity defense concerns whether "as a result of a sever mental disease or defect" the defendant at the time of the commission of the offense knew "his conduct was wrong." Tex.Penal Code Ann. § 8.01(a). The two issues are wholly distinct with no common elements. *Graham v. State,* 566 S.W.2d 941, 954 (Tex.Crim.App.1978). Trial counsel may well have believed that his client possessed the mental capacity to understand the proceedings against him and to assist in those proceedings and believed that at the time of the commission of the offense that his client was suffering from a mental illness such that he did not know his conduct was wrong.[15]

■■■■■ As for trial counsel's arguments during punishment closing arguments, again nothing is contrary in his arguments to his trial strategy. A defendant may be competent, sane at the time he committed the offense, but nevertheless lack the mental capacity necessary to commit the crime "deliberately."[16] Because these three issues are

---

**14.** The first special issue asks "whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result." Tex. Code Crim.Proc. art. 37.0711, § 3(b)(1).

**15.** No evidence at trial indicated appellant was anything other than competent. The psychiatrist, Dr. Sparks, signed an affidavit stating his diagnosis was that appellant was in fact competent to stand trial. Trial counsel, himself, stated that he believed appellant was competent to stand trial.

**16.** In fact defense counsel might very well raise an insanity defense during the guilt portion of the trial to accentuate his punishment strategy that the defendant lacked the mental capacity necessary to "deliberately" commit the crime. The insanity defense would necessarily be placed before the jury early in the trial. Therefore, even

independent of one another, trial counsel's performance did not fall below an objective standard of reasonableness. Trial counsel did not err in refusing to request a competency hearing.

> 3. Counsel waived the insanity and competency rights of appellant and allowed him to change his plea to "guilty" before the jury, even though there was no plea bargain agreement, the State announced that it would continue to seek the death penalty, and at opening statement counsel stated that he would present an insanity defense.

The record indicates that appellant chose to change his plea with full knowledge that he would waive his insanity and competency rights. An essential requisite to successfully attacking a guilty plea on ineffective assistance grounds is that appellant must show the alleged deficiencies caused his plea to be unknowing and involuntary. *See Glaze v. State*, 675 S.W.2d 768, 769 (Tex.Crim.App. 1984) (challenge to guilty plea). Trial counsel is in no position to *prevent* a defendant from knowingly and intelligently entering a plea of his choosing. Counsel exists to advise his client of the consequences of the defendant's actions. In the proceeding before the court, the trial court verified that appellant was "knowingly and intelligently" entering his plea and had been advised of the detrimental effects of his plea. *See Godinez v. Moran*, 509 U.S. ——, ——, 113 S.Ct. 2680, 2683, 125 L.Ed.2d 321, 332–333 (1993) (Standard for competency is the same for a defendant who desires to plead guilty as the standard for competency to stand trial). Trial counsel was not ineffective for properly advising his client.

> 4. Counsel did not voir dire the panel on their understanding of how they might

give effect to mitigating evidence or what is mitigating, if at all, about insanity, mental illness, mental retardation, disruptive childhood and other elements of the profile offered by the Supreme Court in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and construed by this Court in *Lackey v. State*, 819 S.W.2d 111 (Tex.Crim.App.1991).

> 5. Where the district court restricted voir dire on these issues, counsel failed to object to the Court's restrictions.

Appellant asserts trial counsel did not object to the Court's restriction on voir dire concerning trial counsel's examination of what evidence each veniremember believed was mitigating.[17] However, appellant is factually in error. As early as the first juror, trial counsel informed the court during a lengthy bench conference of his intention to question the potential jurors in that very way. Trial counsel stated,

> I'll be honest with the Court, that's precisely what we want to do is to have these jurors commit—or these venire men, rather, commit on whether certain proposed— not necessarily proposed evidence in this case, but certain issues regarding the person accused of this offense that would be offered in mitigation, such as has been suggested by some cases, of difficult childhood, economic deprivation, mental retardation, illiteracy, youth …

To explain his objection further, trial counsel offered the trial court the following question for purposes of examination of the venire: "In a given situation, where they heard that type of evidence as we've described, mental retardation, among other things, that they would compartmentalize that in their own belief system to us as either being mitigating or not." The trial court indicated that when

though the insanity defense may not result in a not guilty by reason of insanity, it may assist counsel's punishment arguments. Questions of competency, though, are never placed before the jury which adjudicates the defendant's guilt or punishment. Strategically, therefore, there is value in raising competency issues when counsel believes his client is competent.

17. Appellant's brief on this point of error concerning trial counsel error's professional error is fleeting and consists of the following:

Counsel did not voir dire the panel on their understanding of how they might give effect to mitigating evidence or what is mitigating, if at all, about insanity, mental illness, mental retardation, disruptive childhood and other elements of the profile offered by the Supreme Court in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and construed by this Court in *Lackey v. State*, 819 S.W.2d 111 (Tex.Crim.App.1991).

that question was asked he would sustain the State's objection. When the veniremember returned for examination, trial counsel asked the question and the State objected. The State's objection was sustained.

Trial counsel similarly attempted to examine the next several prospective jurors. Finally, during the examination of the fifth veniremember, trial counsel notified the trial court that he intended to inform the jurors that the trial court would inform the jury that particular evidence was mitigating. The State objected, and the trial court sustained that objection. Trial counsel did inquire of the fifth veniremember whether she could find that due to mitigating circumstances a defendant should not die.[18]

▮▮ Appellant argues the trial court erred in refusing to allow counsel to inquire as to how the prospective jurors would give effect to the mitigation evidence in their verdict. He contends further that trial counsel did not object to the trial court's restriction of his voir dire concerning this matter. However, we believe trial counsel properly preserved the error in this matter.[19] In that regard, trial counsel was not ineffective.

6. Counsel failed to object to the trial court's misinstructing the jury, when the trial court made each venireperson swear that the fact that the punishment could be death in this case "would not affect" their deliberations on any issue in violation of *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).

Appellant argues that every prospective juror, with one exception, swore under an oath that the mandatory penalty of death or life imprisonment would not "affect his [or her] deliberations on any issue of fact." *See*

Tex.Penal Code Ann. § 12.31(b) (West 1990). Appellant asserts trial counsel is ineffective for failing to object to this procedure. The State informed the trial court that this oath had been removed from the statute and that it was no longer required. Neither party objected to the trial court emphasizing the mandatory nature of the punishment,[20] and no juror was challenged for cause based on his inability to follow the oath. *See* Point of error five, *supra*. It is this lack of an objection appellant now asserts was ineffective.

The trial court's inquiry concerning the oath may have identified for the State those jurors who were opposed to the death penalty, but it would also have identified those potential jurors who were strongly in favor of it. Because of the benefit of the court's question concerning the oath, we do not believe that trial counsel was unreasonable in failing to object to the trial court presenting the old oath to the jurors. Counsel's action could very well represent sound defensive strategy to help identify at the onset of voir dire those individuals opposed or in favor of the death penalty. Therefore, appellant has failed to demonstrate that trial counsel was ineffective.

7. Counsel failed to file a motion to set aside the indictment.

▮▮ In his brief appellant contends trial counsel was ineffective for failing to file a pretrial motion to quash the indictment. Trial counsel objected to the "indictment" on the basis that it did not identify the term of the grand jury nor did it identify which District Court the Grand Jury was empaneled by. The trial court ruled that trial counsel's failure to file a pretrial motion had waived any objection to the indictment.[21]

---

**18.** Counsel inquired:

> Ten of you might decide to answer these [special issues] no, because you might consider certain pieces of evidence as mitigative (sic); so, mitigating that the person on trial doesn't deserve to die. You look for it, you hear it. If you see it, you see it. If you don't see it, you don't see it. In answering those [special issues,] you will be allowed to consider that evidence, if you see it. I'm asking you if you'll do that in answering these questions?

**19.** However, a potential juror is not challengeable because he or she does not believe particular

evidence is mitigating. *Robertson*, 871 S.W.2d at 712.

**20.** The trial court appears to have intended to decrease the time of voir dire by establishing from the onset what each potential juror's views were of the death penalty.

**21.** Appellant's counsel contends that the above argument satisfies the prejudice prong of *Strickland, supra*. However, appellant has only demonstrated, if at all, that trial counsel was defective in failing to file the motion. Appellant's label of his argument as "prejudice" does not

Assuming that trial counsel should have filed a pretrial motion, appellant cannot make a showing of prejudice in this case. Both omissions in the indictments were matters of form and could have been amended prior to trial or during trial if appellant did not object. Tex.Code Crim.Proc.Ann. arts. 28.09, 28.10 and 28.11. Appellant can make no showing that but for counsel's error, the result would have been different.

8. Counsel failed to request a mitigating instruction on intoxication at punishment.

 Appellant argues that counsel was ineffective for failing to request a mitigating instruction on temporary insanity caused by voluntary intoxication. *See* Tex.Penal Code Ann. § 8.04. However, our review of the record indicates that there is no evidence in the record that appellant was intoxicated at the time of the offense.[22] In fact, appellant identifies no evidence in the record which would indicate he used any intoxicants prior to or during the commission of the offense. Therefore, appellant would not have been entitled to the charge had it been requested. *See Miniel v. State,* 831 S.W.2d 310, 320 (Tex.Crim.App.), *cert. denied,* — U.S. —, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992); *Cordova v. State,* 733 S.W.2d 175, 190 (Tex.Crim. App.1987), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988). Because it would not have been error for the trial court to refuse the instruction on temporary insanity because of intoxication, we do not believe trial counsel was ineffective for failing to request such an instruction.

Appellant's final point of error is overruled. The judgment of the trial court is affirmed.

CLINTON, J., concurs in the result.

BAIRD, J., concurs with note: I join the majority opinion but pause to reiterate the remarks expressed in *Jackson v. State,* 877 S.W.2d 768, 772 (Tex.Cr.App.1994) (Baird and Overstreet, JJ., concurring). Appellate counsel would be well advised and appellants would be better served, if claims of ineffective assistance of counsel were *not* raised on direct appeal but rather in applications seeking habeas corpus relief.

---

satisfy the prejudice prong of *Strickland.* Appellant's argument is inadequately briefed. Tex. R.App.P. 74(f).

**22.** Appellant directs our attention to evidence that he took a "hit" of spray paint *after* the commission of the offense and evidence that appellant had both in the past and during his time in prison inhaled spray paint or paint thinner.