# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00645-CR

**Lloyd Standley, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-09-904065, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted Lloyd Standley of driving while intoxicated (DWI), a second-degree felony given Standley's criminal history.[1] *See* Tex. Penal Code Ann. §§ 12.42(a)(3), 49.04, 49.09(b)(2) (West Supp. 2010). The jury assessed punishment at twenty years' confinement and a $5,000 fine. On appeal, Standley argues that we should overturn his conviction because he received ineffective assistance of counsel during trial. We affirm the conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

On the night of November 10, 2006, motorist Klaus Pfeffer observed Standley driving erratically on a freeway. Pfeffer called 911 and began following Standley. Standley exited the freeway and pulled into a gas station, driving over a curb before parking at a gas pump. Pfeffer

---

[1] Standley had five prior convictions for DWI.

testified that Standley subsequently stumbled around, opened his trunk instead of his gas tank, and dropped his wallet and credit card then had trouble picking them up off the ground.

Police officer Ciaran Crozier responded to the 911 call and found Standley trying to pump gas and clean his windshield simultaneously. Crozier approached and began speaking with Standley. Crozier testified that Standley's speech was "very slow, deliberate, mumbled, confused, [and] hard to understand." He also testified that Standley's eyes were glassy and red, that Standley looked "very tired," and that Standley "was swaying pretty significantly back and forth." Standley told Crozier that he had not been drinking but had taken the medication Prevacid. He did not mention any other medications or medical conditions. Crozier offered to call Emergency Medical Services, but Standley replied that he did not need medical attention. When Crozier asked Standley for identification, Standley searched through his wallet slowly and deliberately, then handed Crozier a photograph of his grandchildren.

Crozier did not smell alcohol on Standley but suspected that Standley might be intoxicated by another substance. He proceeded to administer standardized field-sobriety tests: the horizontal-gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Crozier testified that Standley exhibited all six of the possible clues of intoxication on the HGN test, seven of the eight possible clues of intoxication on the walk-and-turn test, and all four of the possible clues of intoxication on the one-leg-stand test. Crozier testified that these results led him to believe, based on his training, that Standley was intoxicated as opposed to merely tired.

Crozier arrested Standley and took him to jail. During the booking process, Crozier observed Standley fall asleep "quite a few times" and try to put his shoes on the wrong feet. The

2

jail's nurse interviewed Standley and drew his blood with his consent. Standley told the nurse that he had medical conditions for which he had been taking methadone, Zoloft, and another medication. The nurse determined that Standley could not be kept safely at the jail, so he was taken to a hospital, where he was treated and released.

Toxicologist Lisa Christensen analyzed Standley's blood sample shortly after it was taken. She testified at trial that the sample contained diazepam (Valium), nordiazepam (a Valium metabolite that yields the same effects as Valium), alprazolam (Xanax), and methadone (an opiate). She testified that the level of Xanax in Standley's blood was between two and six times normal therapeutic amounts. She also testified that Valium, Xanax, and methadone are central nervous system depressants with side effects that include drowsiness, dizziness, light-headedness, memory confusion, speech impairment, and blurred vision. Christensen watched the police videotape of Standley from the night of the offense, and she testified that Standley appeared to be suffering from several of these side effects. Christensen also testified that the side effects of Valium, Xanax, and methadone are cumulative, so combining the drugs is more dangerous than taking any one of them alone.

After the State rested, Standley's attorney sought to call Dr. Heinz Aeschbach to the stand as the defense's only witness. Aeschbach, a psychiatrist who specializes in substance addiction, had been treating Standley for more than three years before Standley's arrest. The State objected to Aeschbach testifying as an expert, arguing that defense counsel had not given sufficient notice of Aeschbach's testimony. Twenty-eight days before trial, the State had filed a motion seeking disclosure of the defense's proposed expert witnesses "not later than the thirtieth day before

3

the trial begins." The State did not obtain a pretrial ruling on the motion, however, and apparently Standley's attorney did not notify the State that he planned to call Aeschbach as an expert. The State expressed no objection at trial to Aeschbach testifying as a layperson familiar with Standley about how Standley's behavior on the police video subjectively compared to his usual behavior. The State did object, however, to Aeschbach testifying as an expert on Standley's medical history or the State's toxicology report.

In responding to the State's notice arguments, Standley's attorney failed to argue that the State's motion for disclosure was untimely and that the State never obtained a ruling on its motion. The trial court initially ruled that it would allow Aeschbach to testify as a layperson on how Standley's behavior on the police video compared to his usual behavior. Although the court ruled that it would not allow Aeschbach to testify as an expert on toxicology per se, it ultimately ruled that it would allow Aeschbach to testify as a "doctor" (presumably the court meant "expert") on (1) whether Standley's behavior on the video suggested intoxication and (2) whether the amount of drugs found in Standley's system was "excessive."

When Standley's attorney examined Aeschbach before the jury, Aeschbach testified that he had reviewed Standley's police videotape. In his opinion Standley "appeared anxious and sleepy . . . I do not consider him to exhibit the signs of intoxication. I think the symptoms are consistent with both sleep deprivation and/or side effects from the medications that he was taking." Standley's attorney then asked Aeschbach a series of questions about the State's toxicology report. He first asked about the reported level of diazepam in Standley's blood. Aeschbach opined, "My understanding is that is essentially below the cut of [sic] where the result is conclusive; and that

4

being the result is below a level that is conclusive, it's not proven that it is exactly the substance, it could be a similar substance or not all of the effect." Standley's attorney next asked Aeschbach about the report's methadone findings. Aeschbach answered that the report indicated that Standley had methadone in his system but did not indicate how much. Aeschbach noted that Standley had a valid prescription for daily methadone use.

Standley's attorney then asked Aeschbach, "Are you able to . . . look at that report and correlate the video that you saw? Do you have an opinion as to whether Mr. Standley showed signs of intoxication?" Without objection from the State, Aeschbach replied:

> I don't think there is anything conclusive that we can say from the video or from the lab result. The lab—the levels are highly individual and many people are quite tolerant to relatively high levels. But you cannot say for sure the blood level represents a certain dosage taken. That cannot be conclusively said. There is considerable variability. This is a relatively high level as far as I know, but I don't think there is anything conclusive.

After the defense rested, the jury found Standley guilty and sentenced him to twenty years' confinement plus a $5,000 fine. Standley appeals, claiming he received ineffective assistance of counsel at trial.

## STANDARD OF REVIEW

Claims of ineffective assistance of counsel are governed by the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (holding that *Strickland* standard applies in noncapital sentencing proceedings). To prevail on a claim of ineffective assistance of counsel,

a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome. *See Strickland*, 466 U.S. at 687-88. Counsel's performance is deficient if it falls below a reasonable standard of professional norms. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). Such a performance prejudices the defense if there is a reasonable probability that, but for counsel's substandard performance, the trial's result would have been different. *Id*. The defendant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence, and allegations of ineffective assistance of counsel will only be sustained if they are firmly founded in the record. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). Courts are to apply "a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance," and we consider the totality of counsel's representation and the circumstances of the case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In determining the validity of a defendant's claim of ineffective assistance of counsel, our judicial review must be "highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Id*.

## DISCUSSION

Standley argues that he received ineffective assistance of counsel because his trial attorney "failed to present the primary defensive evidence." Standley states that his "entire defense was predicated upon the testimony of Dr. Heinz Aeschbach," but "the bulk of [Aeschbach's] testimony was not presented" due to trial counsel's "failure to understand the rules of evidence and the status of the proceedings."

6

In support of this argument, Standley claims that "trial counsel conceded that [Aeschbach's] expert witness testimony was inadmissible" in response to the State's argument that it had not received notice of Standley's intent to call Aeschbach as an expert witness. We have searched the record, however, and found no such concession. But even if we had, we cannot say in hindsight that such a concession would necessarily have fallen below a reasonable standard of professional norms. *See id*. (hindsight not a basis to second-guess soundness of counsel's strategic decisions). For example, defense counsel could have reasonably concluded that further delay or objection at that time would not have been in his client's best interest, given that the trial court had previously denied one defense motion for a continuance and expressed a desire to proceed expeditiously.

More importantly, regardless of any initial concessions by Standley's attorney, the record shows that Standley's attorney was ultimately able to get most, if not all, of Aeschbach's expert testimony into evidence. Standley complains that the

> primary importance of Dr. Aeschbach's testimony was, obviously, to have been that Appellant had a certain tolerance for methadone, and that his tolerance would have meant that he had not lost the normal use of his mental [and] physical faculties due to the introduction of methadone into his body. The secondary importance of the doctor's testimony was to interpret the toxicology report, so as to explain that the levels of Valium and Xanax were not sufficient to have caused Appellant to lose the normal use of his mental or physical faculties, even when combined with the methadon[e].

Although the trial court's initial rulings indicated that Aeschbach would be prohibited from testifying as an expert on these subjects, defense counsel nevertheless managed to elicit testimony on them when Aeschbach took the stand. For example, as detailed above, Aeschbach testified that, in his

7

opinion as a doctor, the toxicology report did not conclusively establish that Standley had been intoxicated because "the levels are highly individual and many people are quite tolerant to relatively high levels." He also testified that, in his expert opinion, Standley did not appear intoxicated in the police video, but rather appeared anxious or tired in accordance with the expected side effects of his medication. As such, Aeschbach ultimately testified on the topics that Standley identifies as having been of "primary" and "secondary importance" to the defense.

The record makes clear that defense counsel was ultimately permitted to elicit expert testimony from Aeschbach. Thus, we see no support for Standley's claim that his trial counsel "failed to present the primary defensive evidence." It follows that Standley has not demonstrated that defense counsel's performance was substandard. *See Smith*, 286 S.W.3d at 340 (to demonstrate ineffective assistance of counsel, defendant must show that counsel's performance was substandard).

Furthermore, even if Standley could demonstrate that defense counsel's performance was substandard, we would not be persuaded that there is a reasonable probability that, but for counsel's substandard performance, the trial's outcome would have been different. *Id*. The State presented strong evidence that Standley was intoxicated. The passing motorist testified to observing Standley driving erratically and stumbling around. Officer Crozier testified to a number of signs that Standley was intoxicated, including Standley's failure of three field sobriety tests. Further, the State's toxicologist testified that the drugs found in high levels in Standley's blood were dangerous intoxicants whose effects were cumulative. In light of all this evidence, it is not reasonably probable that additional testimony from Aeschbach, if he had any more to offer, would have affected the trial's

8

outcome. Standley's claim of ineffective assistance of counsel therefore fails, and we affirm the trial court's judgment of conviction.

_____

Jeff Rose, Justice

Before Justices Henson, Rose and Goodwin

Affirmed

Filed:   February 18, 2011

Do Not Publish

9