TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00645-CR






Lloyd Standley, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT

NO. D-1-DC-09-904065, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted Lloyd Standley of driving while intoxicated (DWI), a second-degree
felony given Standley's criminal history. (1) See Tex. Penal Code Ann. §§ 12.42(a)(3), 49.04,
49.09(b)(2) (West Supp. 2010). The jury assessed punishment at twenty years' confinement and a
$5,000 fine. On appeal, Standley argues that we should overturn his conviction because he received
ineffective assistance of counsel during trial. We affirm the conviction.


FACTUAL AND PROCEDURAL BACKGROUND

 On the night of November 10, 2006, motorist Klaus Pfeffer observed Standley
driving erratically on a freeway. Pfeffer called 911 and began following Standley. Standley exited
the freeway and pulled into a gas station, driving over a curb before parking at a gas pump. Pfeffer
testified that Standley subsequently stumbled around, opened his trunk instead of his gas tank, and
dropped his wallet and credit card then had trouble picking them up off the ground.

 Police officer Ciaran Crozier responded to the 911 call and found Standley trying to
pump gas and clean his windshield simultaneously. Crozier approached and began speaking with
Standley. Crozier testified that Standley's speech was "very slow, deliberate, mumbled, confused,
[and] hard to understand." He also testified that Standley's eyes were glassy and red, that Standley
looked "very tired," and that Standley "was swaying pretty significantly back and forth." Standley
told Crozier that he had not been drinking but had taken the medication Prevacid. He did not
mention any other medications or medical conditions. Crozier offered to call Emergency Medical
Services, but Standley replied that he did not need medical attention. When Crozier asked Standley
for identification, Standley searched through his wallet slowly and deliberately, then handed Crozier
a photograph of his grandchildren.

 Crozier did not smell alcohol on Standley but suspected that Standley might be
intoxicated by another substance. He proceeded to administer standardized field-sobriety tests: the
horizontal-gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Crozier
testified that Standley exhibited all six of the possible clues of intoxication on the HGN test, seven of
the eight possible clues of intoxication on the walk-and-turn test, and all four of the possible clues
of intoxication on the one-leg-stand test. Crozier testified that these results led him to believe, based
on his training, that Standley was intoxicated as opposed to merely tired.

 Crozier arrested Standley and took him to jail. During the booking process, Crozier
observed Standley fall asleep "quite a few times" and try to put his shoes on the wrong feet. The
jail's nurse interviewed Standley and drew his blood with his consent. Standley told the nurse that
he had medical conditions for which he had been taking methadone, Zoloft, and another medication.
The nurse determined that Standley could not be kept safely at the jail, so he was taken to a hospital,
where he was treated and released.

 Toxicologist Lisa Christensen analyzed Standley's blood sample shortly after it was
taken. She testified at trial that the sample contained diazepam (Valium), nordiazepam (a Valium
metabolite that yields the same effects as Valium), alprazolam (Xanax), and methadone (an opiate).
She testified that the level of Xanax in Standley's blood was between two and six times normal
therapeutic amounts. She also testified that Valium, Xanax, and methadone are central nervous
system depressants with side effects that include drowsiness, dizziness, light-headedness, memory
confusion, speech impairment, and blurred vision. Christensen watched the police videotape of
Standley from the night of the offense, and she testified that Standley appeared to be suffering
from several of these side effects. Christensen also testified that the side effects of Valium, Xanax,
and methadone are cumulative, so combining the drugs is more dangerous than taking any one
of them alone.

 After the State rested, Standley's attorney sought to call Dr. Heinz Aeschbach to
the stand as the defense's only witness. Aeschbach, a psychiatrist who specializes in substance
addiction, had been treating Standley for more than three years before Standley's arrest. The State
objected to Aeschbach testifying as an expert, arguing that defense counsel had not given sufficient
notice of Aeschbach's testimony. Twenty-eight days before trial, the State had filed a motion
seeking disclosure of the defense's proposed expert witnesses "not later than the thirtieth day before
the trial begins." The State did not obtain a pretrial ruling on the motion, however, and apparently
Standley's attorney did not notify the State that he planned to call Aeschbach as an expert. The State
expressed no objection at trial to Aeschbach testifying as a layperson familiar with Standley about
how Standley's behavior on the police video subjectively compared to his usual behavior. The State
did object, however, to Aeschbach testifying as an expert on Standley's medical history or the State's
toxicology report.

 In responding to the State's notice arguments, Standley's attorney failed to argue
that the State's motion for disclosure was untimely and that the State never obtained a ruling on
its motion. The trial court initially ruled that it would allow Aeschbach to testify as a layperson on
how Standley's behavior on the police video compared to his usual behavior. Although the court
ruled that it would not allow Aeschbach to testify as an expert on toxicology per se, it ultimately
ruled that it would allow Aeschbach to testify as a "doctor" (presumably the court meant "expert")
on (1) whether Standley's behavior on the video suggested intoxication and (2) whether the amount
of drugs found in Standley's system was "excessive."

 When Standley's attorney examined Aeschbach before the jury, Aeschbach testified
that he had reviewed Standley's police videotape. In his opinion Standley "appeared anxious
and sleepy . . . I do not consider him to exhibit the signs of intoxication. I think the symptoms are
consistent with both sleep deprivation and/or side effects from the medications that he was taking."
Standley's attorney then asked Aeschbach a series of questions about the State's toxicology report.
He first asked about the reported level of diazepam in Standley's blood. Aeschbach opined, "My
understanding is that is essentially below the cut of [sic] where the result is conclusive; and that
being the result is below a level that is conclusive, it's not proven that it is exactly the substance,
it could be a similar substance or not all of the effect." Standley's attorney next asked Aeschbach
about the report's methadone findings. Aeschbach answered that the report indicated that Standley
had methadone in his system but did not indicate how much. Aeschbach noted that Standley had a
valid prescription for daily methadone use.

 Standley's attorney then asked Aeschbach, "Are you able to . . . look at that report
and correlate the video that you saw? Do you have an opinion as to whether Mr. Standley showed
signs of intoxication?" Without objection from the State, Aeschbach replied: 


I don't think there is anything conclusive that we can say from the video or from
the lab result. The lab--the levels are highly individual and many people are quite
tolerant to relatively high levels. But you cannot say for sure the blood level
represents a certain dosage taken. That cannot be conclusively said. There is
considerable variability. This is a relatively high level as far as I know, but I don't
think there is anything conclusive.



 After the defense rested, the jury found Standley guilty and sentenced him to
twenty years' confinement plus a $5,000 fine. Standley appeals, claiming he received ineffective
assistance of counsel at trial.


STANDARD OF REVIEW

 Claims of ineffective assistance of counsel are governed by the United States
Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984). See Hernandez
v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (holding that Strickland standard applies
in noncapital sentencing proceedings). To prevail on a claim of ineffective assistance of counsel,
a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient
performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome. See
Strickland, 466 U.S. at 687-88. Counsel's performance is deficient if it falls below a reasonable
standard of professional norms. Smith v. State, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). Such
a performance prejudices the defense if there is a reasonable probability that, but for counsel's
substandard performance, the trial's result would have been different. Id. The defendant bears the
burden of proving ineffective assistance of counsel by a preponderance of the evidence, and
allegations of ineffective assistance of counsel will only be sustained if they are firmly founded in
the record. Rodriguez v. State, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). Courts are to apply
"a strong presumption that counsel's conduct fell within the wide range of reasonable professional
assistance," and we consider the totality of counsel's representation and the circumstances of the
case. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In determining the validity
of a defendant's claim of ineffective assistance of counsel, our judicial review must be "highly
deferential to trial counsel and avoid the deleterious effects of hindsight." Id.


DISCUSSION

 Standley argues that he received ineffective assistance of counsel because his
trial attorney "failed to present the primary defensive evidence." Standley states that his "entire
defense was predicated upon the testimony of Dr. Heinz Aeschbach," but "the bulk of [Aeschbach's]
testimony was not presented" due to trial counsel's "failure to understand the rules of evidence and
the status of the proceedings."

 In support of this argument, Standley claims that "trial counsel conceded that
[Aeschbach's] expert witness testimony was inadmissible" in response to the State's argument that
it had not received notice of Standley's intent to call Aeschbach as an expert witness. We have
searched the record, however, and found no such concession. But even if we had, we cannot say
in hindsight that such a concession would necessarily have fallen below a reasonable standard
of professional norms. See id. (hindsight not a basis to second-guess soundness of counsel's
strategic decisions). For example, defense counsel could have reasonably concluded that further
delay or objection at that time would not have been in his client's best interest, given that the
trial court had previously denied one defense motion for a continuance and expressed a desire to
proceed expeditiously.

 More importantly, regardless of any initial concessions by Standley's attorney, the
record shows that Standley's attorney was ultimately able to get most, if not all, of Aeschbach's
expert testimony into evidence. Standley complains that the 


primary importance of Dr. Aeschbach's testimony was, obviously, to have been that
Appellant had a certain tolerance for methadone, and that his tolerance would have
meant that he had not lost the normal use of his mental [and] physical faculties due
to the introduction of methadone into his body. The secondary importance of the
doctor's testimony was to interpret the toxicology report, so as to explain that the
levels of Valium and Xanax were not sufficient to have caused Appellant to lose the
normal use of his mental or physical faculties, even when combined with the
methadon[e]. 



Although the trial court's initial rulings indicated that Aeschbach would be prohibited from testifying
as an expert on these subjects, defense counsel nevertheless managed to elicit testimony on them
when Aeschbach took the stand. For example, as detailed above, Aeschbach testified that, in his
opinion as a doctor, the toxicology report did not conclusively establish that Standley had been
intoxicated because "the levels are highly individual and many people are quite tolerant to relatively
high levels." He also testified that, in his expert opinion, Standley did not appear intoxicated in the
police video, but rather appeared anxious or tired in accordance with the expected side effects of his
medication. As such, Aeschbach ultimately testified on the topics that Standley identifies as having
been of "primary" and "secondary importance" to the defense.

 The record makes clear that defense counsel was ultimately permitted to elicit expert
testimony from Aeschbach. Thus, we see no support for Standley's claim that his trial counsel
"failed to present the primary defensive evidence." It follows that Standley has not demonstrated
that defense counsel's performance was substandard. See Smith, 286 S.W.3d at 340 (to demonstrate
ineffective assistance of counsel, defendant must show that counsel's performance was substandard).

 Furthermore, even if Standley could demonstrate that defense counsel's performance
was substandard, we would not be persuaded that there is a reasonable probability that, but for
counsel's substandard performance, the trial's outcome would have been different. Id. The State
presented strong evidence that Standley was intoxicated. The passing motorist testified to observing
Standley driving erratically and stumbling around. Officer Crozier testified to a number of signs
that Standley was intoxicated, including Standley's failure of three field sobriety tests. Further, the
State's toxicologist testified that the drugs found in high levels in Standley's blood were dangerous
intoxicants whose effects were cumulative. In light of all this evidence, it is not reasonably probable
that additional testimony from Aeschbach, if he had any more to offer, would have affected the trial's
outcome. Standley's claim of ineffective assistance of counsel therefore fails, and we affirm the
trial court's judgment of conviction.



 __________________________________________

 Jeff Rose, Justice

Before Justices Henson, Rose and Goodwin

Affirmed

Filed: February 18, 2011

Do Not Publish



 
1. Standley had five prior convictions for DWI.