COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





NOEL IGNACIO VALVERDE,

                            Appellant,

v.


THE STATE OF TEXAS,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-05-00230-CR

Appeal from the

120th Judicial District Court

of El Paso County, Texas 

(TC# 20040D05276) 





O P I N I O N
 
            Noel Ignacio Valverde appeals his conviction for retaliation. A jury found him guilty as
charged in the indictment and assessed punishment at 2 years’ confinement, probated to 2 years
of community supervision. The trial court sentenced Appellant to the same with 73 days in
El Paso County Detention Facility as a condition of probation. In three issues, Appellant
challenges the legal and factual sufficiency of the evidence to sustain his conviction and contends
his trial counsel rendered ineffective assistance. We affirm.
            During the early morning hours of October 3, 2004, El Paso Police Officers Hector Flores
and Alvaro Sepulveda were detailed to serve an arrest warrant for Jesse Valverde (“Jesse”) at
2473 Tierra Nueva. The officers requested assistance from Officers Castro, McBain, and
Sarmiento because they had been advised of possible weapons at that location. Officers were set
up around the perimeter of the house. Officer Flores and Sarmiento knocked on the front door
and announced “Police,” for about five or six minutes before Appellant answered. The officers
advised Appellant that his brother Jesse had an outstanding warrant for his arrest. After
confirming Jesse’s identity and verifying the warrant with the dispatcher, they took Jesse into
custody without incident.
            As the officers were attempting to leave the residence, Appellant came out of the house,
demanding to see the actual arrest warrant. Officer Flores noticed that Appellant had slurred
speech, glassy bloodshot eyes, and he had a very strong odor of an alcoholic beverage on his
person and breath. Appellant was standing about three or four feet from the officers and was
dressed only in his underwear. Officer Flores testified that the officers advised Appellant of their
procedure and told him that they did not have to show him a hard copy of the warrant. Appellant
became irate and angry with the police officers. Officer Sarmiento recalled that he tried to
explain the warrant process five or six times, before deciding they should leave because there
was no point in trying to explain to Appellant who was extremely intoxicated and becoming
aggressive. They told Appellant to go inside and turned their backs on him. Appellant was
belligerent and continued to insist on seeing the warrant. Appellant began shouting at the
officers, stating,“I’m a Vietnam vet. I fought for you. And you’re being politically incorrect
with me . . . I have weapons, I know how to use them. I’m going to shoot you motherfuckers,
just like that other fucker, in the ass.” Officer Flores believed Appellant was referring to Officer
Barcena, who had been shot and killed during a domestic disturbance call two weeks prior. 
According to Officer Sarmiento, Appellant had started walking towards his house before they
informed him that he was going to be arrested for retaliation. Appellant then ran behind his wife
who was standing outside the doorway and grabbed hold of her while he was running to the
house. Officer Flores believed that the threat was directed at all the officers who were present. 
He thought Appellant was heading towards his house to get a gun and became concerned for his
and the other officers’ safety. Officers Flores and Sarmiento grabbed Appellant by the wrists and
tried to take Appellant into custody, but he continued to struggle, moving back, and trying to run
inside the residence. Officer Bain recalled that during the struggle, Appellant was still trying to
pull on his wife and that it looked like she was falling, so he and Officer Sepulveda pushed her to
the side. Officer Sarmiento used the straight-arm bar technique to take Appellant down to the
ground and arrest him.
            Officer Flores testified that he believed Appellant when he threatened to shoot them and
thought the threat was imminent. Officer Flores denied that the police were irritated or upset by
Appellant’s requests for the warrant. Officer Sarmiento also testified that he took Appellant’s
comments as a serious and real threat because of Appellant’s demeanor and because he started
walking towards his house as if to go back inside. In addition, the recent police shooting death
was still fresh in his mind. However, he denied that the recent incident made him more sensitive
to threats.
            Officer Sepulveda offered similar testimony about the incident. According to Officer
Sepulveda, he tried to explain to Appellant that they had already confirmed the warrant as valid,
but Appellant continued to demand to see the warrant. Officer Sarmiento then tried to explain
and, at some point, Officer Sarmiento told the officers, “[l]et’s go . . . There’s no point in
arguing or anything.” They all started to leave and Appellant continued arguing, stating, “I’m a
Vietnam veteran, you’re being politically incorrect,” and “I have weapons. I know how to use
them. That’s why you fuckers get shot in the ass. You guys are next.” According to Officer
Sepulveda, at that point Officers Flores and Sarmiento approached Appellant and Appellant
attempted to get back into the house. Officers Flores and Sarmiento then attempted to take
Appellant into custody because he had threatened the officers. Officer Sepulveda likewise
testified that he was concerned about Appellant getting back into the house because he had said
he owned weapons. The officers took Appellant’s threats seriously. Officer Sepulveda was also
aware that the dispatch indicated there was weapons in the residence. On cross-examination,
Officer Sepulveda agreed that Appellant’s wife was at the front entrance, between Appellant and
the front door and that Appellant was about four to six feet from his front door. Officer
Sepulveda was about seven or eight feet from Appellant when he heard Appellant’s comment.
            Appellant testified that on the prior evening, he drank a couple of beers with his brother
and watched television before going to bed around 10 p.m. Around 3 a.m., Appellant’s wife
woke him up and told him there were flashlights all over the windows in the backyard. The
doorbell rang and Appellant opened the door. Two uniformed police officers were at the door,
asking for his brother Jesse. He told Jesse that someone was looking for him and Jesse
voluntarily walked out and was handcuffed without incident. Appellant became scared because
the officers had not identified themselves and only told him that Jesse had an outstanding arrest
warrant for a ticket. It did not make sense to Appellant that Jesse was being arrested for a ticket
at three o’clock in the morning by so many officers. The officers would not show him the
warrant, he could not see their badges or I.D.’s, just a red patch on the shoulder. They gave him
no information and he could not see any patrol cars in front of his house. Appellant did not know
if they were police officers or not, so he began to ask questions. Appellant became irritated 
when the officer said he did not feel like showing him the warrant. The officer began arguing
with Appellant and Appellant grew more irritated and started using profane language. Appellant
told the police that their attitude was the biggest problem between the police department and the
public.
            Appellant recalled that the officers tried to explain why they did not have an arrest
warrant, but he remained unsatisfied with their response because it did not match his
understanding of the law. Appellant was giving the officers a hard time because he was scared
and it was early in the morning. Appellant then told the officers that they treat people like they
are a God and treat the public like they are a bunch of nobodies. Appellant followed the police
outside to see if he could see a number off their patrol car. As they were leaving, Appellant said
“[t]hat’s why you motherfuckers get shot.” Appellant denied ever threatening the officers. He
knew that an officer had previously been slain in the line of duty two weeks earlier, but his
comment was directed at the officers’ poor attitude with the public, not the shooting. Appellant
testified that it was a stupid remark at the time, but he was scared and not thinking straight. 
Appellant stated that he was never in Vietnam or in the military. After his comment, the officers
kept walking away, so he proceeded to go back inside the house. As he went to close the door,
an officer kicked the door open and hit him in the knee. He pushed his wife back. Two officers
then slammed him to the floor and pulled him out of the house. After he was dragged to the
police car, he tried to explain the misunderstanding and told the officer that he was not referring
to the fallen police officer who died a hero. Appellant told the jury that what he did was very
stupid and wrong and he had apologized to the officers.
            In Issues One and Two, Appellant challenges the legal and factual sufficiency of the
evidence to sustain his conviction for retaliation. Specifically, Appellant contends the State
failed to prove the retributory element of the offense.
            In reviewing the legal sufficiency of the evidence, we must view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509
(Tex.Crim.App. 2005). The trier of fact is the sole judge of the weight and credibility of the
evidence. Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). In conducting our
review, we may not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000);
Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Any inconsistencies in the
evidence are resolved in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406
(Tex.Crim.App. 2000).
            In reviewing the factual sufficiency of the evidence, we must determine whether
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt
beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004),
overruled on other grounds by Watson v. State, 204 S.W.3d 404 (Tex.Crim.App. 2006). 
Evidence can be factually insufficient if the evidence supporting the verdict, considered by itself,
is too weak to support the finding of guilt beyond a reasonable doubt, or contrary evidence is so
strong that guilt cannot be proven beyond a reasonable doubt. Id. at 484-85. Our evaluation,
however, should not intrude upon the fact finder’s role as the sole judge of the weight and
credibility given to any witness’s testimony. See Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997). We will not set aside the judgment unless the evidence supporting the
verdict is so weak as to be clearly wrong and manifestly unjust. Zuniga, 144 S.W.3d at 481. A
clearly wrong and manifestly unjust verdict occurs where the jury’s finding “shocks the
conscience” or “clearly demonstrates bias.” Id. An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports the appellant’s
complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). 
            In this case, the State was required to prove beyond a reasonable doubt that Appellant
intentionally or knowingly threatened to harm Alvarado Sepulveda by an unlawful act, to wit: to
shoot him, in retaliation for or on account of his service or status as a public servant, to wit: an
El Paso police officer. See Tex.Pen.Code Ann. § 36.06(a)(1)(A)(Vernon Supp. 2006). A
central purpose of Section 36.06 is to encourage a certain class of citizens to perform vital public
duties without fear of retribution. In the Matter of M.M.R., 932 S.W.2d 112, 115 (Tex.App.--El Paso 1996, no pet.). Consequently, to support a conviction for the offense of retaliation, the
evidence must establish the retributory element, that is, proof that the unlawful act was
committed in retaliation for or on account of another person’s service as a public servant. Id. It
is not enough that the State demonstrate a public servant was harmed while lawfully discharging
his official duties; rather the State must prove the harm inflicted resulted from a retributive attack
for duties already performed. Riley v. State, 965 S.W.2d 1, 2 (Tex.App.--Houston [1st Dist.]
1997, pet. ref’d); In Matter of M.M.R., 932 S.W.2d at 115.
            Viewing the evidence in the light most favorable to the verdict, the record shows that
Officer Sepulveda with four other police officers went to Appellant’s residence to serve an arrest
warrant on Appellant’s brother, Jesse. Jesse was taken into custody without incident. Having
arrested Jesse, the police officers then proceeded to leave. At that point, Appellant came out of
the house demanding to see the hard copy of the arrest warrant. Appellant became irate and
aggressive as the officers tried to explain the warrant process to him. Appellant was told to go
back inside, but instead he continuing arguing with them and then threatened to shoot them in the
buttocks.
            Appellant asserts that because he made his comments to the officers before he was
arrested, the threats were not made on account of them arresting him and thus, the retributory
element is missing in this case. However, the jury could have reasonably inferred that Appellant
had a retaliatory purpose in threatening to shoot Officer Sepulveda and the other officers because
the threat was made after they had exercised their authority and fully performed an official duty
by arresting his brother. From the evidence, the jury could have found beyond a reasonable
doubt that Appellant intentionally threatened to shoot the officers because they had arrested his
brother; not because they were arresting Appellant. We conclude the evidence is legally
sufficiency to sustain the conviction.
            Moreover, after viewing all the evidence in a neutral light, we conclude the evidence was
not too weak to support the guilty finding beyond a reasonable doubt nor is the contrary
evidence, in particular Appellant’s conflicting version of events, strong enough that the beyond-a-reasonable doubt standard was not met. Therefore, we conclude the evidence is both legally
and factually sufficient to sustain Appellant’s conviction. Issues One and Two are overruled.
            In Issue Three, Appellant contends the trial court erred in denying his motion for new trial
because his defense counsel admitted being ineffective at trial. Generally, a trial court’s denial of
a motion for new trial is reviewed for an abuse of discretion. Salazar v. State, 38 S.W.3d 141,
148 (Tex.Crim.App. 2001). To demonstrate ineffective assistance of counsel in a motion for new
trial, a defendant must show: (1) counsel’s performance fell below an objective standard of
reasonableness; and (2) there is a reasonable probability that but for counsel’s deficient
performance, the result of the proceeding would have been different. Strickland v. Washington,
466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Rodriguez v. State, 899
S.W.2d 658, 664 (Tex.Crim.App. 1995).
            In reviewing an ineffective assistance of counsel claim, we must indulge a strong
presumption that counsel’s conduct falls within the wide range of reasonable professional
assistance and the appellant must overcome the presumption that the challenged conduct might
be considered sound trial strategy. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; Thompson v.
State, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). Any allegation of ineffectiveness must be
firmly founded and affirmatively demonstrated in the record to overcome this presumption. 
Thompson, 9 S.W.3d at 813. It is the defendant’s burden to prove ineffective assistance of
counsel by a preponderance of the evidence. Id.
            In this case, Appellant filed a motion for new trial on June 14, 2005. The motion only
alleged that the evidence was insufficient to support the judgment of conviction. At the motion
hearing on August 2, 2005, Appellant orally amended the motion to include an ineffective
assistance claim. A motion for new trial cannot be amended after thirty days, even with leave of
the court. Drew v. State, 743 S.W.2d 207, 222-23 (Tex.Crim.App. 1987); Dugard v. State, 688
S.W.2d 524, 530 (Tex.Crim.App. 1985), overruled on other grounds by Williams v. State, 780
S.W.2d 802, 803 (Tex.Crim.App. 1989); Belton v. State, 900 S.W.2d 886, 902 (Tex.App.--El Paso 1995, pet. ref’d). Untimely amended motions for new trial cannot form the basis for an
issue on appeal, even if the original motion for new trial is timely. Dugard, 688 S.W.2d at 529-30; Webb v. State, 109 S.W.3d 580, 581 (Tex.App.--Fort Worth 2003, no pet.). Even if the trial
court could consider an oral amended motion, the trial court was not authorized to consider
Appellant’s ineffective assistance claim because it was untimely. Therefore, the trial court did
not abuse its discretion by denying the motion for new trial as to the ineffective assistance claim.
            To the extent that Appellant brings his ineffective assistance claim independent of the
trial court’s ruling, Appellant still has the burden of proving by a preponderance of the evidence
that his trial counsel’s performance was deficient and that there is a reasonable probability,
sufficient to undermine confidence in the outcome, that the result of the proceeding would have
been different, but for counsel’s unprofessional errors. See Jackson v. State, 877 S.W.2d 768,
771 (Tex.Crim.App. 1994).
            Appellant claims that at the motion hearing, his trial counsel essentially admitted that his
performance was deficient by failing to call potential witnesses. Defense counsel has the duty to
make an independent investigation of the facts and circumstances of the case by seeking out and
interviewing potential witnesses. Ex Parte Welborn, 785 S.W.2d 391, 393 (Tex.Crim.App.
1990); Ex Parte Ybarra, 629 S.W.2d 943, 946 (Tex.Crim.App. 1982). However, trial counsel’s
failure to call “other” witnesses at the guilt-innocence phase of trial is irrelevant absent a
showing that the purported witnesses were available and that their testimony would have
benefitted the defendant. See King v. State, 649 S.W.2d 42, 44 (Tex.Crim.App. 1983). The
record is silent as to who the potential witnesses actually were or whether their testimony would
have benefitted Appellant. Apparently, these witnesses attended the trial and some testified at
the punishment phase, but the record is silent as to trial counsel’s strategy in not calling them at
the guilt-innocence phase. When faced with a silent record as to counsel’s strategy, this Court
will not speculate as the reasons for counsel’s actions. See Jackson, 877 S.W.2d at 771. Further,
Appellant concedes that he cannot show that but for his counsel’s deficient performance, the
outcome of his trial would have been different. We conclude that Appellant has failed to meet
his burden to show his trial counsel’s performance was deficient or sufficient prejudice, therefore
his ineffective assistance of counsel fails. Issue Three is overruled.
            We affirm the trial court’s judgment.



December 14, 2006
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)