Affirmed and Memorandum Opinion filed April 12, 2007








Affirmed and Memorandum Opinion filed April 12, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00307-CR

____________

 

ROBERT GLENN JONES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 49680

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant Robert Glenn Jones of murder and
assessed punishment at life and a $10,000 fine.  On appeal, appellant contends
the evidence is legally and factually insufficient to support his conviction,
the trial court erred in admitting certain witness testimony, and he received
ineffective assistance of counsel in the punishment phase.  We affirm.

Factual
and Procedural Background

The following evidence was presented at trial to prove
appellant=s guilt.  On Saturday, May 28, 2005, the body of the
complainant, Derrick Dudley, was found in his trailer located in a trailer park
in Angleton, Texas.  The body was lying on a bed in a pool of blood, and blood
was splattered on the walls and ceiling.  Five .25 caliber bullet casings were
laying on Dudley=s bed around his body.  The right pocket
of Dudley=s shorts was pulled out and had blood on it.[1] 
The authorities later determined that Dudley had been shot in the head five
times while he was asleep.  The first shot, fired from a greater distance than
the others, fatally wounded Dudley.  The next four shots were fired close
together at close range.

Dudley was a drug dealer who was known as AD-Lo.@  A lot of people
would visit Dudley at his trailer house to use and sell drugs.  Dudley would
allow people to stay with him, and he sometimes gave out keys to his trailer. 
Dudley=s usual routine
was to go to bed very late and get up around midday. 








Dudley and appellant had been friends.  Appellant, who was
known as APooda,@ was from Houston, but he sometimes stayed
with Dudley at his trailer.  Despite their friendship, J=Quay Peterson, who
was a friend of Dudley=s and who had a sexual relationship with
appellant, had often heard appellant say that he was Agoing to get@ Dudley.[2] 
Dudley=s girlfriend,
Pauline Davidson, had also heard appellant make derogatory comments about
Dudley behind Dudley=s back.[3] 


A few days before Derrick Dudley was killed, he and
appellant argued and physically fought one another.  Several people in the
trailer park witnessed the fight, in which Dudley apparently Agot the better@ of appellant. 
Reginald Dudley, Derrick Dudley=s father, broke up the fight, and when he
did so he saw that appellant had blood on his mouth.  The police were called,
and appellant was arrested and taken to jail.  After getting out of jail,
appellant, driving a green Ford Explorer, returned to the trailer park to get
his belongings from a neighbor and the trunk of Dudley=s car.  

On the Friday night before Dudley was killed, appellant
rented a room at the Sony Motel in Houston.  At approximately 1:30 a.m. on
Saturday, Catrina Dudley, Derrick Dudley=s sister,
overheard a telephone conversation between Derrick Dudley and appellant.  She
heard appellant tell Dudley, AMan, I ain=t got your shit. 
Quit calling my phone.@  When Derrick Dudley told appellant to
bring back money appellant had apparently taken from him, appellant responded, AYou better hope
you make it to me before I make it to you.@[4] 








Around 1:45 that same morning, Kavin Campbell, who was
known as AKK,@ and Latara Lovelace drove to Houston to
pick up some money appellant owed Campbell.[5] 
At the Sony motel, Campbell and Lovelace went to appellant=s room, where
Lovelace heard appellant say he was going to return to Angleton to Akill Derrick.@[6]  Appellant also
said AI have a nine.@  Although neither
Lovelace nor Campbell saw a gun, appellant told Campbell he had a gun in the
dresser drawer and said his gun would be Awaiting on@ anyone who came
looking for him.  However, appellant did not give Campbell the impression he
was going to kill Dudley.  According to Campbell, appellant expressed concern
that Dudley and his acquaintances would come looking for him, and he seemed
both angry and afraid.  Appellant appeared Aparanoid@ and Adrugged up@ as he paced the
room, acting Aprepared for anything.@ 

Campbell and Lovelace left appellant at the Sony Motel and
drove back to Angleton.  On the way, appellant called Campbell several times on
a cell phone.  Campbell and Lovelace arrived in Angleton around 4:45 a.m. and
went to bed.  Sometime between 5:00 and 5:30 a.m., appellant called and said he
was on his way to Angleton.  A few minutes later, appellant called again to say
he was almost there.  Around 6:15 a.m., appellant called again, sounding
hysterical and loud, and said he was lost and needed to find his way back to
Houston.  Shortly after that, appellant called and said that he had found his
way and was going back to Houston.

At trial, Gulab Bava, the manager of the Sony Motel,
testified that appellant had rented a room Friday night, May 27, the day before
Dudley was killed.  Bava also testified that he saw appellant leave the motel
early Saturday morning, around 5:00 a.m., in a green Jeep-type vehicle.  Bava
confirmed that the vehicle he saw appellant driving was the vehicle depicted in
State=s Exhibit 31, a
picture of a green Ford Explorer belonging to Shannon Smith, a girlfriend of
appellant.  Bava testified appellant did not return.








Around 1:30 p.m. that afternoon, Campbell went to Derrick
Dudley=s trailer, where
he met Reginald Dudley, who was standing on the porch.  They both tried to wake
Derrick Dudley by banging on the doors and trailer.  After trying several
different ways to awaken Derrick Dudley, Campbell looked in the window and,
when he saw blood, he kicked in the trailer door.  Campbell and Reginald Dudley
went to Derrick=s room and found him dead.  They called
911.  Police then arrived to secure the crime scene and search for evidence.

Jermaine Williams, a friend of Derrick Dudley=s and an
acquaintance of appellant, heard about Derrick=s death, and went
to the trailer.  Williams used his cell phone to call appellant that afternoon,
and he recorded his conversations with appellant.  When Williams told appellant
he was at AD-Lo=s house,@ appellant
responded, AWhat=s wrong with D-Lo?@  Williams said Ahe dead,@ to which
appellant asked AWho killed him?@  In another
recorded call between appellant and Campbell, appellant asks Campbell to Akeep his ear to
the street@ and Akeep very quiet about this,@ which Campbell
understood to be references to appellant=s murder of
Derrick Dudley.  Appellant also told Campbell to Ashut his mouth . .
[or] the same shit going to happen.@

Appellant was arrested and taken to the Brazoria County
jail.  At the jail, he was housed in a part of the facility identified as
A-Row.  An inmate named Jerrell Donley was also housed in A-Row across from
appellant.  At trial, Donley testified that he heard appellant talking loudly
to another inmate, Daniel Johnson, who was in the cell adjoining appellant=s.  Donley
testified he heard appellant say AKK need to keep
his mouth closed@ and that appellant Aain=t got shit to
worry about because they ain=t got no evidence on him.@  Appellant also
told Donley that Athey didn=t have anything on
him@ because he would
not Aleave smoke in his
trail.@  Regarding
Derrick Dudley, appellant said, AA dead man can=t talk.@








Daniel Johnson, the inmate in the cell adjoining appellant=s, testified that
appellant confessed to him that he murdered Derrick Dudley.  Johnson testified
that the confession came after appellant had been in jail about three days. 
Johnson told the jury that appellant said that he confessed because he could
not sleep at night, his conscience was bothering him, and he didn=t trust anybody. 
Johnson testified that appellant said he killed Derrick Dudley because Dudley Awas in his
business@ and they had
gotten in a fight resulting in Dudley going to jail and getting out the next
day.  Appellant told Johnson that he went to Derrick Dudley=s trailer and shot
him in the head while he was asleep.  Appellant also said that, after he killed
Derrick Dudley, he went to Houston to give the money he took to his wife,
Shannon.  Johnson also testified that appellant said that Campbell told
appellant that Dudley had gotten some people together to look for appellant and
that Dudley was asleep at the trailer.  Appellant went on to say that this was
when he jumped in his wife=s Explorer, went to Dudley=s trailer and shot
him.  According to Johnson, appellant also stated that as long as Campbell did
not Aopen his mouth@ the police would
not have anything on him.  As for Dudley, appellant repeatedly said of him AA dead man can=t talk,@ as he smiled and
laughed.  Because Johnson thought it was a cowardly way to kill somebody, he
decided to inform law enforcement authorities about the information he had.  He
denied having read newspaper accounts of the crime.








Johnson also testified that he was in jail on a burglary
charge, and that he had been in custody for eleven months.  He testified that
the complainant in that case was a lady he was living with at the time.  He
admitted that, with a prior enhancement, the punishment for the offense ranged
from five to ninety-nine years or life.[7] 
Johnson had notified the authorities the day after he received the information
from appellant, and admitted he was distressed when he did not immediately get
a response.  Johnson testified that he rejected an offered plea bargain for two
years in prison because he was not guilty of the charge.  The month before
appellant=s trial began, Johnson again met with prosecutors to
discuss the information he had against appellant, and he was offered a plea
agreement on a reduced charge of criminal trespass, a Class A misdemeanor. 
When asked when he was scheduled to be released, Johnson stated that he was set
to go to court that Friday after he testified.  According to Johnson, he was
offered the plea agreement because he had been in jail eleven months and the
State lacked evidence of a burglary.  Johnson further testified that he had
agreed to wear a wire to record appellant when appellant confessed to him a
second time, but the tape recorder did not work.

At trial, photographs and evidence collected from the crime
scene were presented to the jury.  Among other things, two large cookies of
cocaine and three cell phones were found in appellant=s trailer. 
However, no physical evidence linking appellant to the crime scene was found. 
Officers had collected samples from the crime scene for DNA testing, but none
of the samples matched appellant.  Tests for blood in the green Ford Explorer
appellant drove were negative.  The gun used in the shooting apparently was
never located.

The jury found appellant guilty of murder.  After the
punishment phase, the jury found one of two prior convictions true and assessed
appellant=s punishment at life and a $10,000 fine.

Appellant=s Issues

On appeal, appellant raises five issues:  (1) the evidence
is legally insufficient to show that appellant shot the deceased; (2) the
evidence was factually insufficient to show that appellant shot the deceased;
(3) the trial court abused its discretion by allowing a witness to speculate
about what appellant meant when he said to Akeep quiet about
this@; (4) appellant
received ineffective assistance of counsel at punishment because counsel stated
Ano objection@ to the admission
of evidence of drugs found during the arrest and search of appellant; and (5)
appellant received ineffective assistance of counsel at punishment when he
failed to object to the prosecutor=s argument that
allegedly asked the jury to ignore the law and evidence and to punish appellant
as a second offender rather than as an habitual offender.  We address each
below.








1.       The Legal
Sufficiency of the Evidence

Appellant contends the evidence is legally insufficient to
show that he shot Derrick Dudley.  First, appellant contends the only direct
evidence against him was provided by Daniel Johnson, an inmate whose testimony
was not credible because he was highly motivated to lie to get out of jail. 
Appellant argues it is not credible that appellant would make a confession to a
complete stranger after three days in jail, or that the attempt to tape record
appellant=s alleged second confession failed.  Appellant also
argues the evidence shows that Johnson used appellant=s confession to
obtain an advantageous plea agreement that enabled him to get out of jail
shortly after testifying against appellant. 

Second, appellant argues that the circumstantial evidence
at most casts suspicion on appellant but does not, taken in its entirety, place
appellant at Dudley=s trailer at the time of the killing, and
does not eliminate the Amany others@ who may have had
a motive and opportunity to kill Dudley.  Appellant points out that no one saw
appellant in Angleton at the time of the murder, no one saw him with a gun, and
no physical evidence links him to the crime.  Further, appellant argues that
any incriminating statements he made to others could have been references to
the theft of money from Dudley rather than his murder.  Appellant also points
out that Dudley was a drug dealer, he associated with people who came and went
from his home twenty-four hours a day, and he allowed other people to stay with
him.  Appellant further notes that the fact witnesses were involved in the
Angleton drug culture, while appellant was from Houston. 

A.      Standard of
Review








In evaluating the legal sufficiency of the evidence, we
must view the evidence in the light most favorable to the prosecution and
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Vasquez v. State, 67 S.W.3d 229, 236 (Tex.
Crim. App. 2002).  This standard of review applies to cases involving both
direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995).  Although we consider all evidence presented at trial,
we may not re‑weigh the evidence and substitute our judgment for that of
the jury.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  The
jury is the exclusive judge of the credibility of witnesses and of the weight
to be given their testimony, and it is the exclusive province of the jury to
reconcile conflicts in the evidence.  Mosley v. State, 983 S.W.2d 249,
254 (Tex. Crim. App. 1998).

B.      The
Evidence is Legally Sufficient

First, appellant contends the direct evidence of appellant=s confession,
supplied by Johnson, was Anot entitled to belief@ because Johnson
successfully negotiated a plea on a much-reduced charge and was set to be
released shortly after giving his testimony.  However, the jury in this case
heard the testimony concerning appellant=s confession and
the circumstances of Johnson=s plea agreement, and it was charged with
assessing Johnson=s credibility and the weight of his
testimony.  The jury was entitled to believe all, some, or none of Johnson=s testimony
concerning appellant=s confession, and we may not supplant our
judgment for that of the jury in matters of witness credibility.  

Additionally, ample circumstantial evidence was presented
that is legally sufficient to support appellant=s conviction. 
Circumstantial evidence alone may be sufficient to support a conviction.  See
Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).  Here, the
circumstances included the following:

$                  
appellant
stated he was Agoing to get@ Dudley;

$                  
a few days
before Dudley was murdered, appellant lost a fight to Dudley and was arrested
and taken to jail;

$                  
Catrina Dudley
heard appellant say that Dudley had better get to appellant before appellant
got to Dudley;

$                  
appellant told
Latara Lovelace that he was going to kill Dudley;

$                  
appellant was
seen leaving his rented motel room in Houston about 5:00 a.m. on May 28, 2005,
in a green Ford Explorer;








$                  
appellant
called Kavin Campbell and said he was on his way to Angleton at approximately
5:30 that same morning;

$                  
appellant again
called Campbell, this time hysterical and loud, saying he was lost and needed
to get back to Houston; 

$                  
appellant=s questions to Jermaine Williams on
the recorded telephone conversations, when appellant asked AWhat=s wrong with D-Lo?@ and AWho killed him?@ when Williams said he was at Dudley=s trailer could be construed as
admissions;

$                  
appellant
sometimes stayed with Dudley, and would have known his usual routine;

$                                                                                          
Dudley was shot
five times in the head at close range, indicating an intentional murder;  

$                  
when appellant
was in jail he stated that the State did not have any evidence on him and that
Kavin Campbell needed to keep his mouth closed; and,

$                  
appellant
repeatedly said Aa dead man can=t talk.@

Moreover, as with Johnson=s testimony, the
jury was entitled to weigh the credibility of the witnesses, and it was
entitled to resolve the evidence in the State=s favor.  Given
the totality of the evidence, it was rational for the jury to believe beyond a
reasonable doubt that appellant was guilty of Derrick Dudley=s murder.  We
overrule appellant=s first issue.

2.       The
Factual Sufficiency of the Evidence

In his second issue, appellant contends the evidence is
factually insufficient to show that he shot Derrick Dudley.  Appellant advances
many of the same arguments he made in his first issue and relies on the same
evidence to assert that the record clearly shows Daniel Johnson was not
credible and the circumstantial evidence was insufficient to establish his
guilt beyond a reasonable doubt. 

A.      Standard of
Review








When conducting a factual‑sufficiency review, we view
all of the evidence in a neutral light.  See Cain v. State, 958 S.W.2d
404, 408 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996).  We may set the verdict aside if (1) the evidence is so
weak that the verdict is clearly wrong and manifestly unjust, or (2) the
verdict is against the great weight and preponderance of the evidence.  Watson
v. State, 204 S.W.3d 404, 414B15 (Tex. Crim.
App. 2006) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)).  However, while we may disagree with the jury=s conclusions, we
must exercise appropriate deference to avoid substituting our judgment for that
of the jury, particularly in matters of credibility.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005); see also Watson, 204 S.W.3d
at 414 (stating that a court should not reverse a verdict it disagrees with
unless it represents a manifest injustice even though supported by legally
sufficient evidence).  Thus, while we are permitted to substitute our judgment
for the jury=s when considering credibility and weight
determinations, we may do so only to a very limited degree.  Marshall v.
State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). 

B.      The
Evidence is Factually Sufficient

In this case, as appellant recognizes, the majority of the
evidence depends on the credibility of the witnesses.  He emphasizes that the
only direct evidence of appellant=s guiltCDaniel Johnson=s testimony that
appellant confessed to him that he killed Derrick DudleyCis not credible
and cannot establish the essential elements of the offense.  Further, as argued
in his first issue, appellant contends the circumstantial evidence does no more
than cast suspicion on him and, therefore, does not establish his guilt beyond
a reasonable doubt.








Johnson testified that appellant told him that he killed
Derrick Dudley in his sleep, in his trailer, by shooting him in the head. 
Appellant also said he drove his wife=s Ford Explorer,
and afterwards went back to Houston and gave money to his wife, Shannon. 
Appellant also said that Kavin Campbell needed to keep his mouth shut, and Aa dead man can=t talk.@ Appellant
contends Johnson=s credibility is Anil@ because his
testimony was merely part of an ultimately successful scheme to avoid prison.  However,
Johnson testified that he did not read any newspaper accounts of the crime, and
there was no evidence that he learned the details he recounted from any other
source.  And, according to Johnson, his burglary charge concerned a residence
where he lived with the complainant, and he testified that he obtained the plea
agreement because the evidence against him was very weak.  Moreover, Johnson=s testimony was
corroborated by other evidence admitted during the trial.  Although appellant
strenuously asserts that Johnson cannot be believed, a rational jury could have
resolved the issues contrary to appellant=s view of the
evidence.

Further, we disagree with appellant=s conclusion that
the circumstantial evidence does no more than cast suspicion on appellant.  It
is correct that no one placed appellant at the scene and no physical evidence
was found to link appellant to the crime.  However, the circumstantial evidence
shows that, among other things, appellant had lived with Dudley and so would
have been familiar with his routine, he lost a fight with Dudley in front of
others and was taken to jail because of the fight, he made threats against Dudley,
the day before Dudley was killed he said he was going to kill Dudley, his
telephone calls placed him in Angleton around the time Dudley was killed, and
he stated in jail that the police had no evidence on him and Aa dead man can=t talk.@  Although
appellant suggests the witnesses who provided much of this evidence were
untrustworthy because they were part of the Angleton drug culture, he does not
provide specific references to evidence he contends support this contention. 
Moreover, although the evidence showed that Dudley was a drug dealer who
frequently associated with others who used and sold drugs and often allowed
others to stay with him, this evidence, and the credibility of the State=s witnesses, was
for the jury to evaluate.








Unless the available record clearly reveals a different
result is appropriate, we must defer to the jury=s determination
concerning what weight to give contradictory testimonial evidence because
resolution often turns on an evaluation of credibility and demeanor of the
witnesses= testimony.  See Watson, 204 S.W.3d at 414; Johnson
v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).  Although we may disagree
with the jury=s conclusions, we may do so only Ato a very limited
degree.@  See Marshall,
210 S.W.3d at 625.  Here, we cannot say that the jury=s decision is
manifestly unjust merely because the jury resolved conflicting views of the
evidence in favor of the State. 

Our review of the record as a whole, with consideration
given to all of the evidence both for and against the jury=s finding, has not
caused us to conclude that the proof of guilt is so obviously weak or is
otherwise so greatly outweighed by contrary proof as to render appellant=s conviction
clearly wrong or manifestly unjust.  Therefore, we hold that the evidence is
factually sufficient to support the jury=s verdict.  We
overrule appellant=s second issue.

3.       Admission
of Witness Testimony  

In his third issue, appellant contends the trial court
abused its discretion by allowing a witness to speculate as to what appellant
meant when he said to Akeep quiet about this,@ which allowed the
witness to opine that appellant murdered Dudley.  The testimony appellant
complains of occurred as the State questioned Kavin Campbell about a
conversation between Campbell and appellant after Dudley was killed:

Prosecutor:  Did [appellant] ask
you to keep quiet about anything?

Campbell:     Yes, sir.

Prosecutor:  What did he say?

Campbell:     He wouldn=t say.  He just said, AKeep very quiet about this.@

* * * 

Prosecutor:  What did you think
that he meant by that?

Campbell:     Oh, I knew B B 

Defense:      (Mr. McGee) Your
Honor, that calls for speculation.

The Court:    No.  It=s what he thought.

Campbell:     I know what he meant.

The Court:    Just a minute, now. 

Overruled.

Read that last
question back, and then you can answer it, sir.








Reporter:      Question:  AWhat did you think he meant by
that?@

Campbell:     He
meant that to keep quiet about him murdering Derrick.

Appellant contends the testimony is not based on personal
knowledge and therefore, under Rule of Evidence 602, Campbell was not competent
to offer his opinion concerning what appellant meant by his statement.  See
Tex. R. Evid. 602 (AA witness may not
testify to a matter unless evidence is introduced sufficient to support a
finding that the witness has personal knowledge of the matter.@).  However, lay
witness opinion testimony is admissible if it is A(a) rationally
based on the perception of the witness and (b) helpful to a clear understanding
of the witness= testimony or the determination of a fact in issue.@  Tex. R. Evid. 701.  Rule 701=s requirement that
the testimony be based on the witness=s perception
presumes the witness observed or experienced the underlying facts, thus meeting
the personal‑knowledge requirement of Rule 602.  Turro v. State,
950 S.W.2d 390, 403 (Tex. App.CFort Worth 1997, pet. ref=d) (holding that
testimony by victim=s sister about her reaction to overheard
telephone conversation between defendant and victim was admissible when sister
was personally listening to the conversation, was able to perceive inflections
in voices, and had sufficient firsthand familiarity with both people to place a
reasonable interpretation on the inflections).








The initial requirement that an opinion be rationally based
on the perceptions of the witness is itself composed of two parts.  First, the
witness must establish personal knowledge of the events from which his opinion
is drawn and, second, the opinion drawn must be rationally based on that
knowledge.  Fairow v. State, 943 S.W.2d 895, 898 (Tex. Crim. App.
1997).  The perception requirement of Rule 701 requires the proponent of lay
opinion testimony to establish that the witness has personal knowledge of the
events upon which his opinion is based.  Id.  Although a witness cannot
possess personal knowledge of another=s mental state, he
may possess personal knowledge of facts from which an opinion regarding mental
state may be drawn.  Id. at 899.  Once the perception requirement is
satisfied, the trial court must determine if the opinion is rationally based on
that perception.  Id. at 899B900.  An opinion
is rationally based on perception if it is an opinion that a reasonable person
could draw under the circumstances.  Id. at 900. 

We review a decision admitting or excluding evidence under
an abuse of discretion standard; absent an abuse of discretion, we will not
reverse a trial judge=s decision.  See Osbourn v. State,
92 S.W.3d 531, 537 (Tex. Crim. App. 2002). If evidence exists supporting the
decision to admit evidence, there is no abuse, and we must defer to that
decision.  Id. at 538.

Appellant contends Campbell=s testimony was
speculative because Campbell could not know Athe mental
workings of [appellant=s] mind.@  However, as an
initial matter, we note that the question was not what did appellant mean
by his statement, it was what did Campbell think appellant meant. 
Campbell knew appellant, and was with appellant the night before Dudley was
murdered.  In appellant=s motel room, Campbell observed appellant=s anger toward
Dudley and heard appellant state that he had a gun.  Campbell was also the
recipient of multiple telephone calls from appellant that placed appellant in
Angleton around the time of Dudley=s murder. 
Therefore, Campbell=s opinion was rationally based on his
familiarity with appellant and his perception of the events.  Indeed, Campbell
even testified that he Aknew what [appellant] meant.@ Campbell=s opinion also was
one that a reasonable person could draw under those circumstances.  Thus,
Campbell=s opinion
testimony satisfied the first prong of Rule 701Cthat it was
rationally based on the witness=s perception.

Campbell=s opinion also satisfied the second prong
of Rule 701, because it was helpful to the jury=s determination of
the central fact at issueCwhether appellant was guilty of Dudley=s murder.  Even if
the trial court did err in admitting Campbell=s testimony, it
was harmless because the record as a whole contains substantial evidence
inculpating appellant in this murder.  See Tex. R. App. P. 44.2; Motilla v. State, 78 S.W.3d 352,
357 (Tex. Crim. App. 2002).  Therefore, we overrule appellant=s third issue.








4.       Ineffective
Assistance of Counsel

In his fourth and fifth issues, appellant contends he
received ineffective assistance of counsel in two instances during the
punishment phase of the trial:  (1) when counsel stated he had Ano objection@ to the admission
of evidence of drugs found on appellant when he was arrested and stipulated to
appellant=s possession of illegal narcotics; and (2) when
counsel failed to object to the State=s argument, which
allegedly asked the jury to ignore the law and evidence and to punish appellant
as a second offender rather than as an habitual offender so that the jury could
add a $10,000 fine to their verdict.

A.      Standard of
Review

Ineffective assistance claims are governed by the two‑pronged
test announced in Strickland v. Washington, 466 U.S. 668 (1984).  To
prove ineffective assistance, appellant must show (1) that counsel=s representation
was deficient, falling below the standard of prevailing professional norms, and
(2) a reasonable probability that the result of the proceeding would have been
different but for trial counsel=s deficient performance.  Id. at
687B96; Salinas v.
State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  Appellant bears the
burden of proving ineffective assistance by a preponderance of the evidence.  Rodriguez
v. State, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995).








A strong presumption exists that counsel=s conduct fell
within the wide range of reasonable professional assistance.  Salinas,
163 S.W.3d at 740.  To defeat this presumption, Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@  Thompson v.
State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (citing McFarland v.
State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).  When no specific
reason is given for counsel=s decisions, a record on direct appeal
will rarely contain sufficient information to evaluate an ineffective
assistance claim. See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002); Thompson, 9 S.W.3d at 813B14. Further, when
counsel has not been afforded an opportunity to explain his or her decisions,
we do not find deficient performance unless the challenged conduct was A>so outrageous that
no competent attorney would have engaged in it.=@  See Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

B.      Appellant=s Possession of
Drugs

At the start of the punishment phase of the trial, the
State read the two enhancement paragraphs contained in the indictment, both of
which alleged prior convictions for felony possession of a controlled
substance.  Appellant pleaded Anot true@ to both
enhancements.  To prove the allegations in the enhancements, the State
introduced evidence of appellant=s criminal history
by certified copies of pen packets and judgments.  These documents reflected
several convictions and sentences for possession of a controlled substance, as
well as convictions for criminal trespass and evading arrest.  During the
proceeding, the State also called Captain Chris Kinchloe of the Brazoria County
Sheriff=s Office to
testify concerning illegal drugs found on appellant when he was searched after
his arrest.  However, appellant=s counsel repeatedly objected to the
prosecutor=s questions to Kinchloe on the grounds that the State
had not shown that appellant was lawfully in custody when he was searched.  The
trial court sustained the objections. 








In response, the State then called Jerome Griffin, an
investigator at the Brazoria County Sheriff=s Office.  Griffin
testified that he obtained a warrant for appellant=s arrest, arrested
appellant in Houston on June 1, 2005, took appellant to the Brazoria County
jail around midnight, and filled out the return on the warrant shortly after
midnight.  Captain Kinchloe was then recalled and testified that, during a
search of appellant at the Brazoria County Jail, a plastic bag containing
illegal drugs was found inserted into appellant=s rectum.  Defense
counsel did not object to the State introducing the lab report describing the
analysis of each drug found in the bag.[8] 
Defense counsel stated that he had interviewed the chief chemist for the
Brazoria County Sheriff=s Department and agreed to stipulate to
the contents of the bag; he also reiterated that he had Ano objection@ to the admission
of the exhibit.

On appeal, appellant complains that his counsel was
ineffective because he did not continue to object to the admission of this Adamning evidence@ obtained as a
result of the search after an allegedly illegal arrest,[9]
and because counsel=s affirmative statement that he had Ano objection@ to the evidence
waived appellant=s right to appeal its admission. 
Appellant contends the trial court had consistently sustained counsel=s objections to
the evidence before the State showed the evidence was obtained after appellant=s incarceration on
the arrest warrant, and there is no reason to believe it would not continue to
sustain his objections thereafter.  








However, the record shows that defense counsel=s objective was to
require the State to prove appellant was in lawful custody before eliciting
testimony regarding the search and subsequent discovery of the drugs.  In
response to counsel=s objections, the State called
investigator Griffin to testify about the execution and return of the arrest
warrant for appellant.  Once this was done, the State recalled Captain Kinchloe
to testify about the search and discovery of the drugs in the plastic bag. 
Following Griffin=s testimony, defense counsel no longer
objected to Kinchloe=s testimony.  When the State then offered
the lab report containing the results of the analysis of the drugs, defense
counsel said he had interviewed the chemist and agreed to stipulate to the
contents of the bag without objection.  We cannot say that defense counsel
could be considered ineffective by requiring the State to prove a valid warrant
of arrest and custodial search.  Further, the admitted evidence was no more Adamning@ than the other
evidence of appellant=s criminal history.  Contrary to appellant=s assertion, this
record contains nothing to rebut the presumption that appellant=s counsel=s actions were
reasonable and professional. 

We therefore overrule appellant=s fourth issue.

C.      The State=s Argument on
Punishment

In his fifth issue, appellant contends his trial counsel
rendered ineffective assistance when he failed to object to the State=s closing
argument.  According to appellant, the argument asked the jury to ignore the
law and evidence and to punish appellant as a second offender rather than as an
habitual offender, so that the jury could add a $10,000 fine to its verdict. 
Appellant asserts that, had counsel objected, the trial court likely would have
sustained the objection and, upon request, instructed the jury to disregard the
argument.  Without this argument, appellant claims, he would not have been
assessed the fine.  

The argument appellant complains of is the following, with
particular emphasis on the highlighted portion:

You 12 people, now it=s time to decide, what are you going to do with him, the choices that
he has made?  I=m going to ask you to do something
different.  In the jury charge on the second page, I encourage you to sign the
second page.

And this is why:  The law is if you=ve got two priors, sequential
felony convictions and pen trips, it=s 25 to life.  The minimum doesn=t matter here.  What matters is the
principal, the principal of the thing.  Whether you give him 99 or life, it
doesn=t matter.  It=s one-half or 30 years before he=s eligible for parole.  It=s the same.  The principal of the
thing is you give him life.  He took someone=s life; you give him life.

And the reason why
we sign the second verdict form, you give him the fine of $10,000.  That=s the maximum
punishment that he deserves for this crime of murder.  Thou shalt not kill. 
The maximum that he deserves is life and a 10,000-dollar fine.  You can say in
your verdict form that only one of the enhancement allegations is true.  Now,
they=ve probably been proven beyond a
reasonable doubt to both be true, but the principal of the thing is to give
him life and a 10,000-dollar fine.








Appellant=s counsel made no
objection to this argument.  As the prosecution requested, the jury found only
the first enhancement paragraph true, and assessed appellant=s punishment at
life and a $10,000 fine.

In the trial of a first-degree felony, if it is shown that
the defendant has been once before convicted of a felony, the range of
punishment is imprisonment in the institutional division of the Texas
Department of Criminal Justice for 15 to 99 years or life.  See Tex. Penal Code ' 12.42(c)(1).  In
addition, an individual may be punished by a fine not to exceed $10,000.  Id. 
If, however, it is shown that the defendant has previously been finally
convicted of two felony offenses, and the second previous felony conviction is
for an offense that occurred subsequent to the first previous conviction having
become final, the range of punishment is imprisonment in the institutional
division of the Texas Department of Criminal Justice for 25 to 99 years or
life.  See id. ' 12.42(d).  There is no provision for a
fine to be imposed in addition to imprisonment.  

Thus, in appellant=s case, if the
jury found only one enhancement paragraph true, it could assess a punishment of
as low as 15 years= imprisonment, whereas if the jury found
both enhancement paragraphs true, the minimum punishment it could assess would
be 25 years= imprisonment.  However, if the jury was inclined to
assess punishment at the higher end of the range, the maximum terms of
imprisonment would be the same (99 years to life) if one or two enhancement
paragraphs were found to be true.  The jury could assess a fine of up to
$10,000 if it found only one enhancement paragraph true, but, if the jury found
both enhancement paragraphs true, it could not assess any fine against
appellant.  Thus, the prosecutor argued to the jury that it should find only
one enhancement paragraph true so that it could impose not only the maximum
period of imprisonment, but also the maximum fine.








The State responds that this argument was Acreative@ and a proper plea
for law enforcement.  See Jackson v. State, 17 S.W.3d 664, 673 (Tex.
Crim. App. 2000) (AProper jury argument includes four areas: 
(1) summation of the evidence presented at trial, (2) reasonable deduction
drawn from that evidence, (3) answer to the opposing counsel's argument, or (4)
a plea for law enforcement.@).  The State argues that the enhancement
paragraphs are merely allegations that must be proved beyond a reasonable
doubt, and the jury is free to believe or disbelieve any evidence admitted
before it.  And, because appellant pleaded Anot true@ to both
enhancements, the jury could have found neither true.  Because the argument was
proper, the State urges, appellant=s counsel had no
reason to object to it.  Consequently, appellant=s counsel did not
render ineffective assistance by failing to object.  Moreover, the State claims
the argument aided appellant because he was not found to be a habitual
offender.

Assuming without deciding that the prosecutor=s argument was
improper, we conclude appellant has not demonstrated that his counsel=s failure to
object rises to the level of ineffective assistance.  Appellant fails to
demonstrate that his counsel=s silence was not based on reasonable
trial strategy.  Defense counsel may have taken the reasonable trial strategy
of not objecting because the argument encouraged the jury to consider a
punishment range with a lower minimum term of imprisonment.  Given the absence
of evidence regarding counsel=s motives, the presumption of
effectiveness granted counsel, and the great deference we accord decisions made
by defense counsel, we cannot say that appellant proved that his counsel=s failure to
object to the prosecutor=s argument evinced any deficiency in
performance.  See Johnson v. State, 68 S.W.3d 644, 655 (Tex. Crim. App.
2002); see also Bone, 77 S.W.3d at 833 (discussing the applicable
standard of review and stating that seldom will the record on direct appeal be
sufficient to establish a claim). 

Conclusion

We overrule appellant=s issues and
affirm the trial court=s judgment.

 

/s/      Wanda McKee Fowler

Justice

Judgment rendered and Memorandum
Opinion filed April 12, 2007.

Panel consists of Chief Justice
Hedges and Justices Fowler and Edelman.

Do Not Publish C Tex.
R. App. P. 47.2(b). 









[1]  The crime scene investigator explained that the
pocket of Dudley=s shorts had Atransfer
blood@ on it, meaning blood transferred from the hand of the
person who shot Dudley, who likely would have had blood spatter on his hand.





[2]  At trial, Peterson testified that she was under the
influence of drugs when she heard appellant=s
statements about Dudley, but denied that the drugs affected her memory or made
her hallucinate.  She also appeared for trial in orange jail clothes because
she had been convicted of possession of a controlled substance and failure to
identify and was currently in jail.  She testified that a police officer had
offered to make a deal with her for lesser time if she would write to appellant
in jail to find out what happened, but she did not accept any deal.





[3]  Davidson testified that she had been convicted of
theft, theft-by-check, and credit card abuse, but she had made no deals in
exchange for her testimony.





[4]  On cross-examination, Catrina Dudley admitted her
written statement to police did not include the statements appellant made to
Derrick Dudley, but she stated that was because she was upset when she made the
statement.





[5]  Campbell testified that he and Derrick Dudley were
cousins and very close friends.  At the time of trial, he testified that he was
on deferred adjudication probation for possession of a controlled substance and
a motion to revoke his probation was pending.  He also had a pending charge for
making a terroristic threat toward his daughter=s mother.





[6]  On cross-examination, Lovelace admitted she did not
include appellant=s statement in her written statement to police, but
stated that she did tell the investigator that took her statement about it.  She
also testified she did not like appellant.





[7]  Johnson admitted he had previously been convicted of
burglary, aggravated assault, and theft.





[8]  The lab report identified the drugs as cocaine,
ecstasy, and methamphetamine.





[9]  In support of this issue, appellant appears to
include an attack on the sufficiency of the probable cause affidavit and
warrant for his arrest; however, this issue was not raised at the trial court
and so cannot be raised for the first time on appeal.  See Tex. R. App. 33.1.  Even if the evidence were
inadmissible, however, isolated failures to object to improper evidence
generally do not constitute ineffective assistance of counsel.  See Ingham
v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).