# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00668-CR

### Ex parte Judy Stailey

## FROM COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
## NO. C-1-CR-19-100035, THE HONORABLE CHUCK MILLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Judy Stailey appeals the denial of her application for writ of habeas corpus. She contends that the trial court erred by deciding that her trial counsel[1] rendered effective assistance. She argues that her trial counsel was ineffective because he failed to object to the use of hearsay to establish relevance and authenticity of an exhibit and failed to adequately communicate to her the State's plea offer of deferred prosecution. She also contends that the trial court erred by concluding that laches applied to her application. We will affirm the denial of the application.

## BACKGROUND

This appeal arises from Stailey's collateral attack on her conviction for misdemeanor assault with bodily injury. *See* Tex. Penal Code § 22.01(a)(1). In that underlying case, the trial court suspended the sentence of sixty days in jail and a $4,000 fine and placed Stailey on community supervision for two years, with a nine-day jail term as a condition of

---

[1] "Trial counsel" refers to counsel who represented Stailey at the trial on the merits of the criminal prosecution, not her habeas proceeding.

probation. After her direct appeals of that conviction were overruled, Stailey filed an application for writ of habeas corpus that the trial court denied.

**The criminal trial**[2]

In the underlying trial, the victim testified that she was not friends with Stailey and tried to avoid her because Stailey always seemed to have drama going on, though none of that drama had been with her. The victim testified that, on the night of the incident, she was at a hotel bar lounge in downtown Austin. While she talked with a group of people, she felt something wet on her arm, felt a sharp pain on her wrist, and saw a wine glass falling to the ground. The victim testified that she then saw Stailey standing about eight to ten feet away. She did not see Stailey throw the glass, but testified that she heard Stailey say something along the lines of "I did it. I did that, it was me."

A friend of Stailey's who also knew the victim was standing one person away from the victim when the glass was thrown. She turned and saw Stailey about ten feet away, separated from the victim by a chair. She testified that she did not hear Stailey say anything after the glass shattered. The friend testified that Stailey usually drank wine and that, although she did not see Stailey throw the wine glass, she believed Stailey threw it based on Stailey's "bad history" with the victim.

A security agent at the hotel testified that Stailey was the first person he saw in a room of the hotel bar. She had a wine glass in her hand. The security agent testified that he turned away to continue walking through the bar, heard glass break, and turned back. He said he

---

[2] *State v. Stailey*, No. C-1-CR-16-500311 (Cnty. Court at Law No. 7, Travis Cnty., Tex. Apr. 5, 2017), *aff'd Stailey v. State*, No. 03-17-00280-CR, 2018 WL 3637304 (Tex. App.—Austin Aug. 1, 2018, pet. ref'd) (mem. op., not designated for publication).

saw Stailey holding her middle finger in the air toward a group of women who looked surprised. He testified that he noted that Stailey no longer had a glass in her hand, so he asked her if she had thrown the glass; he testified that Stailey told him that she had thrown the glass. He testified that Stailey told him that she had a prior disagreement with the woman she targeted.

Another friend of Stailey's testified that he was at the hotel bar on the night of the incident. He saw her there and was talking to a man who wanted to be introduced to her, but Stailey left before he could make the introduction. He testified that he did not see Stailey holding a drink, giving anyone "the finger," or talking to any security guards, but admitted that he did not know if he was in the room at the time the incident occurred.

During the victim's testimony, the State offered into evidence a recording of a voicemail that the victim said she had been given by a mutual friend of Stailey and the victim a few days after the incident. The victim identified Stailey's voice on the voicemail and said the mutual friend told her that he received it a few days before the alleged incident. In the voicemail, Stailey stated:

> Hi Bob, it's Judy. Last night I was out with Trish, and Bill was at the, uh, bar so I stopped to say hi to him. And we were talking for a while, joking and talking, and he said, "Hey, [the victim's] right behind me," and I didn't notice, and then I was like, "Oh, okay." He said, "What is her deal?" This is what he said, he said, "She's so sour, I don't like her," and I'm like, "Yeah, you get that too, I just don't like her either, I just don't care for her personality. She has none. She's like really, um, she's sour." So, he and I had our conversation. I went back over to the table. Then she goes over there to him, referring to me: "Oh, I'm invisible," and then she said some other things but she didn't know that he doesn't like her either. So, you tell her next time I see her out I'm gonna slap the fucking shit out of her. I'm tired of it. I'm not . . . I don't . . . I'm not with you and I'm not sleeping with you. I have nothing to do with you. I'm gonna slap the fucking shit out of her. And you know what? She's not gonna like it. So you better just tell your friend to stay away from me 'cause next time I hear a smart remark, and I'm probably gonna do it anyway, I'm gonna slap the shit out of her. Call me [garbled].

Stailey objected to the admission of the voicemail, arguing that its probative value was substantially outweighed by its unfairly prejudicial effect. *See* Tex. R. Evid. 403. Trial counsel also mentioned hearsay when making the objection. The trial court overruled the objection and admitted the voicemail.

On direct appeal from the conviction, this Court concluded that Stailey did not show that the trial court abused its discretion by overruling her Rule 403 objection.[3] This Court affirmed the judgment, and the Court of Criminal Appeals refused the petition for review.

**The application for habeas corpus proceeding**

In her application for writ of habeas corpus, Stailey asserted that she was wrongly convicted and sentenced because she did not receive effective assistance of counsel. She complained that her trial counsel's representation was deficient because he (1) failed to object to the State's use of inadmissible hearsay to authenticate the voicemail message and (2) failed to advise her that the State offered to dismiss the underlying case pursuant to a deferred prosecution agreement.

The trial court denied the application, making three findings of fact and three conclusions of law in support. The trial court found that Stailey's delay in filing her application for habeas relief was patently unreasonable and that laches applied to her application. The trial court also concluded that her counsel's representation was effective, based on findings that counsel both objected to the relevance and authenticity of the voicemail and informed her of alternate offers for deferred adjudication and deferred prosecution as evidenced by a handwritten note in the clerk's file from the judge.

---

[3] *Stailey*, 2018 WL 3637304 at *3.

4

**ANALYSIS**

Stailey complains that the trial court erred in making all three findings and conclusions. She challenges the findings and conclusion that laches applies to her application and that her trial counsel rendered effective assistance with regard to both the admission of the voicemail and the communication of the plea offer.

**Applicable law**

To prevail on a post-conviction application for writ of habeas corpus, the applicant bears the burden to prove by a preponderance of the evidence the facts that would entitle her to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In habeas proceedings, virtually every fact finding involves a credibility determination, and the factfinder is the exclusive judge of the witnesses' credibility. *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996).

We review a trial court's decision on a writ of habeas corpus for an abuse of discretion, affording "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). An abuse of discretion occurs only when the trial court acts arbitrarily, unreasonably, or without reference to guiding rules and principles. *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd). The deference to fact findings extends to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. The trial court, as arbiter of witness

credibility, may accept or reject all or any part of a witness's testimony. *Peterson*, 117 S.W.3d at 819 n.68; *see Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008). In reviewing the trial court's decision to grant or deny habeas corpus relief, we consider the evidence presented in the light most favorable to the trial court's ruling, regardless of whether the court's findings are implied or explicit, or based on affidavits or live testimony, provided they are supported by the record. *Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006); *Ex parte Nugent*, 593 S.W.3d 416, 423 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

**Objection to the voicemail**

By point of error two, Stailey contends that her trial counsel provided ineffective assistance by failing to object to hearsay in the testimony adduced to establish the relevance and authenticity of a voicemail she left on an out-of-court declarant's telephone.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that trial counsel's performance was deficient and that a reasonable probability exists that the result of the proceeding would have been different but for the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). Any allegation of ineffectiveness must be firmly founded and affirmatively shown in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). The appellant must establish both prongs of the *Strickland* test by a preponderance of the evidence. *Perez*, 310 S.W.3d at 892–93. Whether this test has been met is to be judged on appeal by the totality of the representation, not by isolated acts or omissions. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995).

To show deficient performance, the appellant must prove by a preponderance of the evidence that counsel's representation fell below the standard of professional norms. *Garza v. State*, 213 S.W.3d 338, 347–48 & n.19 (Tex. Crim. App. 2007) (citing *Strickland*, 466 U.S. at 688). There is a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 688–89. Counsel's performance is evaluated not in hindsight but from counsel's perspective at the time. *Id.* at 689. To show ineffective assistance of counsel for the failure to object during trial, an appellant must show that the trial judge would have committed error in overruling the objection. *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004). The performance and prejudice aspects of a *Strickland* review are mixed questions of law and fact. *Strickland* 466 U.S. at 698.

Stailey contends that the voicemail's relevance depends on temporal proximity to the assault, and that the only evidence of proximity was the victim's testimony that the out-of-court declarant told her that he received the voicemail from Stailey a few days before the assault. Stailey attached an affidavit from the voicemail recipient to her reply to the State's response to her habeas petition; he averred that he had seen Stailey and the victim interact almost weekly in the seventeen months before the incident. Stailey contends that admission of the voicemail harmed her because it showed premeditation and provided proof needed to find her guilty beyond a reasonable doubt despite the fact that no one testified that they saw her throw the glass. She notes that the State emphasized the voicemail repeatedly in its closing arguments.

Stailey's counsel contested the admission of the voicemail at trial. He filed a pretrial motion in limine specifically regarding the voicemail in which he requested that, before parties and witnesses alluded to the voicemail, the offering party be required to obtain a ruling as to hearsay, relevancy, and admissibility of the voicemail. On the record before the trial began,

7

her trial counsel mentioned hearsay issues with the authentication of the voicemail, and the court granted his motion in limine concerning the voicemail. During trial, the State and Stailey's counsel conducted a voir dire examination of the victim outside the presence of the jury regarding admission of the voicemail; Stailey's counsel adduced testimony from the victim that her knowledge of when the voicemail was sent was based entirely on the recipient's statement that he had received it the week before the incident. After the trial court overruled the objection and the State offered the voicemail before the jury, Stailey's counsel stated, "I'd just like to renew our objection as far as 403 hearsay—" and the court interrupted and admitted the exhibit. Stailey's counsel also cross-examined the victim and induced her to admit that she did not know what day Stailey left the voicemail. The victim testified that she "knew" the voicemail was from the week before the incident because she had run into Stailey at another restaurant that week but, in response to Stailey's counsel's question, the victim admitted that she had assumed that the voicemail arrived after that meeting. He also induced an admission that Stailey did not slap her as threatened in the voicemail.

Stailey correctly asserts that the trial court's finding that her trial counsel objected to the voicemail based on relevance is not supported by the record. However, Stailey has not shown that the trial court erred by denying her habeas application because she has not shown that her counsel's performance overall was deficient. First, it is not clear that a relevance objection was warranted; Stailey's sentiments on the voicemail about the victim—whenever they were made—have some relevance to this assault on the victim. *See* Tex. R. Evid. 401. The trial court would not have erred harmfully by overruling a relevance objection. Further, Stailey's trial counsel made the court aware of the hearsay and authentication issue and adduced supportive testimony. He conducted the voir dire examination and reiterated the objection when the exhibit

8

was offered in front of the jury; the trial court cut him off, saying "I recall the objection, and sustain the ruling. The evidence is admitted." Trial counsel may have chosen not to aggravate the trial court in front of the jury by insisting on further expounding on the objections that the trial court made clear it understood and rejected. He then adduced the victim's admission that she assumed that Stailey had left the voicemail earlier in the week of the assault. Trial counsel also filed motions, made other objections, examined witnesses, and argued for acquittal and lesser punishment. Based on the totality of the representation, Stailey has not shown that her trial counsel provided deficient representation despite not objecting to admission of the voicemail on the basis of relevance.

Further, Stailey has not shown a reasonable probability that any deficiency in her counsel's performance caused a different result in the proceeding. Stailey's express complaints about testimony concerning the receipt of the voicemail elicited during a voir dire examination of the victim fail; that testimony was outside the presence of the jury and did not affect the jury's deliberations on guilt/innocence. Further, Stailey did not show that, had her trial counsel made the "missing" objection, the trial court's only choice was to exclude the voicemails. Because the victim identified Stailey's voice on the voicemail, the trial court might have admitted the voicemail and instructed the jury that the lack of evidence of the timing of the voicemail could affect the weight the jury should give it. *See Owens v. State*, 56 S.W.2d 867, 868 (Tex. Crim. App. 1933). Consistent with that concept, Stailey's trial counsel asked questions before the jury that cast some doubt on when the voicemail was received.

More critically, however, evidence other than the voicemail filled the same alleged "gap" in evidence on Stailey's motive and identity as the thrower of the wineglass:

9

- Stailey's friend testified that Stailey had bad history with the victim and that, because of that history, she believed Stailey threw the glass. She saw Stailey standing ten feet from the victim when the glass shattered with no one between her and the victim.

- The victim testified that she did not consider Stailey a friend and that she tried to avoid Stailey because she seemed to always have "drama" around her. The victim testified that, after she was hit by the wine glass, Stailey—who was eight to ten feet away—smiled and said something like "I did it. I did that, it was me."

- The security agent testified that he saw Stailey with a wine glass, heard glass break, saw Stailey without a wine glass with her middle finger extended, and heard Stailey admit to him that she threw the glass.

This evidence supported the jury's finding beyond a reasonable doubt that Stailey committed the assault irrespective of the voicemail. There is no reasonable probability on this record that the judgment would have been different had trial counsel objected as Stailey asserts he should have. The implicit finding that Stailey was not prejudiced by the admission of the voicemail was not an abuse of discretion.

Though the trial court erred by finding that Stailey's trial counsel objected on the grounds of relevancy, it did not err by concluding that Stailey's trial counsel provided effective assistance. Stailey has not shown that the trial court abused its discretion by denying the habeas petition on this asserted ground for relief.

We overrule point of error two.

**Informing Stailey about the plea offer**

By point of error three, Stailey asserts that her trial attorney's representation was deficient because he did not communicate the State's offer of a deferred prosecution plea agreement. Stailey contends that she was harmed by this failure because her goal was to have the case dismissed and her record expunged.

10

Defense counsel must communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). A defense attorney's failure to inform a criminal defendant of plea offers made by the State is an omission that falls below an objective standard of professional reasonableness. *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000), *overruled on other grounds by Ex parte Argent,* 393 S.W.3d 781 (Tex. Crim. App. 2013.)

Stailey filed an affidavit in the habeas proceeding stating that she first heard "the full details" of the deferred prosecution plea offer from her post-conviction attorney in 2019. She stated that her trial counsel told her on February 7, 2017, about a plea offer while she was distracted by rush-hour traffic; she said her attorney was concerned about the security agent's potential testimony, but she said she never spoke to a security guard. She averred that, had her counsel communicated the deferred prosecution offer, she would have immediately accepted it. She stated that counsel did not bring up the plea offer at the February 8, 2017 trial setting that was continued.

In response, the State offered an affidavit from Stailey's trial counsel stating that he relayed every plea offer to Stailey, including a deferred adjudication offer and a deferred prosecution offer. He stated that Stailey rejected both offers and specifically that she rejected the deferred prosecution offer at the February 8, 2017 trial setting. The State also offered a document that it said was a photocopy of the inside case jacket cover of Stailey's trial case file. That document indicates that the "2-yr deferred prosecut[ion]" offer was declined on February 8, 2017, and the "18 month deferred" offer was declined on April 3, 2017; the State asserts that the initials "EE" on the notes show that Judge Elizabeth Earle noted Stailey's rejection of the plea offers.

11

Stailey attached to her reply to the State's response a supplemental affidavit in which she asserted that her trial counsel never explained to her that the deferred prosecution offer was qualitatively different from a deferred adjudication offer. She averred that, had she known that she would not be supervised by a probation officer and the arrest could be expunged after completing the deferred prosecution term, she would have accepted that plea offer.

The habeas trial court found that trial counsel informed Stailey of plea offers for deferred prosecution and deferred adjudication. We must defer to the factual findings of the trial judge even when the evidence is submitted by affidavit. *Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex. Crim. App. 2005); *Manzi v. State*, 88 S.W.3d 240, 242-43 (Tex. Crim. App. 2002). The trial court could reasonably have found the assertions in Stailey's affidavit not credible or found that her trial counsel told her of the offer and that she expressed understanding of it, even if she later developed a different opinion about it. Some of Stailey's assertions about counsel's communication in her affidavit are contradicted by her trial counsel's assertions in his affidavit. Regarding credibility more generally, her assertion in her affidavit that she did not speak to a security guard at all is contradicted by the hotel security agent's trial testimony that they conversed and she admitted throwing the glass. We defer to the trial court's choices in assessing the evidence before it and its finding of fact that Stailey's trial counsel informed her of the deferred prosecution offer.

The trial court's finding that Stailey's trial counsel informed her of the deferred prosecution offer supports the habeas trial court's conclusion that her trial counsel's representation of her was effective. Stailey has failed to show that the trial court abused its discretion in denying her habeas application on this basis. We need not analyze the second

prong of *Strickland* on this issue.  Stailey has not shown that the trial court abused its discretion by denying her application for writ of habeas corpus.

We overrule point of error three.[4]

## CONCLUSION

Because Stailey did not show that her counsel provided ineffective representation, we affirm the judgment denying Stailey's application for writ of habeas corpus.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Darlene Byrne, Justices Triana and Smith

Affirmed

Filed:   August 13, 2021

Do Not Publish

_____

[4] Because we have concluded that the trial court did not abuse its discretion by denying Stailey's application for writ of habeas corpus on its merits, we need not consider whether Stailey's application is barred by laches under point of error one.  *See* Tex. R. App. P. 47.1.

13